**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **KYUNG HYE YANO, Individually and as Guardian/Parent/Next Friend of S.Y., a minor,** ) ) ) ) | |
| ) | **Case No.** |
| **Plaintiffs,** ) | |
| ) | **JUDGE:** |
| **v.** ) | |
| ) | **MAGISTRATE:** |
| **CITY COLLEGES OF CHICAGO;** ) | |
| **HARRY S. TRUMAN COLLEGE;** ) | |
| **MOHAMED EL-MAAZAWI,** ) | |
| **CHEMISTRY DEPARTMENT;** ) | |
| **PRISCILLA LANCKI, BIOLOGY** ) | **JURY DEMAND** |
| **DEPARTMENT; ELIA LOPEZ,** ) | |
| **HUMANITIES, ART, AND FOREIGN** ) | |
| **LANGUAGES DEPARTMENT;** ) | |
| **ELIZABETH ROEGER, DEAN OF** ) | |
| **INSTRUCTION; LYNN M. WALKER,** ) | |
| **INTERIM PRESIDENT; PERVEZ** ) | |
| **RAHMAN, VICE PRESIDENT OF** ) | |
| **ACADEMIC AND STUDENT AFFAIRS;** ) | |
| **CHANCELLOR WAYNE WATSON;** ) | |
| **BOARD OF TRUSTEES, CITY** ) | |
| **COLLEGES OF CHICAGO; and** ) | |
| **JOHN/JANE DOES,** ) | |
| ) | |
| **Defendants.** ) | |

**COMPLAINT AT LAW**

Now come the Plaintiffs, by and through Counsel, and do hereby state the
following for their Complaint:

# I. PARTIES

1.    KYUNG HYE YANO (hereinafter "Kyung" is the Mother and/or Guardian and/or

Next Friend and/or Next of Kin of S.Y. who is a minor.  Kyung is a Korean

national with permanent residency status in the United States, and a resident of the Northern District of Illinois.

2.     S.Y. is a minor child born in the United States on June 19, 1996.  She is an academically gifted child who entered Truman College in 2006.  S.Y. is the daughter of Kyung, a Korean national mother, and a Japanese national father, both of whom have legal permanent residency status in the United States.  S.Y. is therefore of East Asian (hereinafter "Asian") descent. S.Y.'s is a resident of the Northern District of Illinois name is being withheld for reasons suggested in the allegations set forth herein.

3.     The City Colleges of Chicago is a system of seven community colleges founded by the city of Chicago in 1911 and located in Cook County IL.  As of the 1966 Illinois Public Community College Act, the City Colleges of Chicago became independent of the Board of Education, governed by its Board of Trustees.  The City Colleges of Chicago makes policy and curriculum decisions for its constituent institutions as well as overseeing their operations.  The City Colleges of Chicago, receives federal and state funding, which it distributes to its constituent institutions.

4.     Harry S. Truman College (hereinafter "Truman College") is a community college located in Cook County, IL.  Truman College is a constituent member institution of the City Colleges of Chicago, is accredited by the Higher Learning Commission of the North Central Association of Colleges and Schools, and is also approved by the Illinois Community College Board, the Illinois Board of Higher Education and the Illinois State Board of Education.

5.   The Board of Trustees of City Colleges of Chicago (hereinafter "The Board of Trustees") is the governing body of the City Colleges of Chicago. The Board is comprised of seven voting members appointed for three-year terms by the Mayor of Chicago with the approval of the City Council of Chicago.  The Board of Trustees oversees the operations of both the central administration of the City Colleges of Chicago, as well as its constituent institutions through the Chancellor and their respective presidents.

6.   Dr. Wayne Watson is Chancellor of City Colleges of Chicago (hereinafter "Chancellor").  As Chancellor, Dr. Watson is responsible for the day to day operations of the City Colleges of Chicago and of overseeing the presidents of its constituent institutions. Dr. Watson is a non-Asian descent male.

7.   Dr. Lynn M. Walker is Interim President at Truman College.  In this capacity, Dr. Walker oversees all aspects of Truman College, and reports to the Chancellor and The Board of Trustees.  Ms. Walker is not of Asian descent.

8.   Dr. Priscilla Lancki is a Professor of Biology at Truman College.  Professor Lancki was S.Y.'s Biology 121 professor.  Professor Lancki is a native of Uganda of East Indian descent; she is not of Asian descent.

9.   Dr. Mohamed El-Maazawi is a Professor of Chemistry at Truman College. Professor El-Maazawi was S.Y.'s Chemistry 201 professor. Professor El-Maazawi is a non-Asian descent male.

10.  Ms. Elia Lopez is a Spanish Instructor at Truman College.  Professor Lopez is not of Asian decent.

11.    Dr Elizabeth Roeger is Dean of Instruction at Truman College.   As Dean of Instruction, Dean Roeger oversees student registration and faculty performance management.   In this capacity, Dean Roeger oversees the grade appeal process, and reports to the Interim President.  Dean Roeger is not of Asian decent.

12.    Dr. Pervez Rahman is Vice President of Academic and Student Affairs (hereinafter "Vice President") at Truman College, in his personal and official capacity.   As Vice President, Dr. Rahman is responsible for the development, coordination, staffing, evaluation, and enhancement of academic and student development programs.   The Vice President Reports Directly to the Interim President.  Dr. Rahman is a non-Asian decent male.

13.    John/Jane Does, unknown employee/agents of Truman College or others unknown at this time, and may include individuals, Corporations, organizations, associations, sole proprietorships, partnerships, government officials, government offices or agencies and any other entity.  Though multiple John/Jane Does may have been involved in the matters at issue in this complaint, at least one John Doe was involved in a stalking incident set forth in paragraph 45 of this complaint.

## II. JURISDICTION AND VENUE

14.    Jurisdiction in this Court over the federal claims in this case is pursuant to 28 U.S.C. 1331.   This court has jurisdiction over the supplemental state law claims that form part of the same case and controversy pursuant to 28 U.S.C. 1367(a).

15.  Venue of this action is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 (b) because the activities conducted by Defendants giving rise to this action occurred in this judicial district, Plaintiff's claims for relief arose in all or in part in this judicial district, and most Defendants reside in this district.

## III. BASIS OF DISPUTE

16.  S.Y. graduated from high school in the Spring of 2006, at age 9.  S.Y. entered Truman College under the open admission policy in the Fall of 2006 to attend classes. She completed 51 hours at Truman College before being forced to withdraw.

17.  Kyung accompanied or attempted to accompany, S.Y. to the campus of Truman College because of S.Y.'s young age and the fact that Truman College did not have means to address issues associated with her young age.   Later, it became important for Kyung to accompany S.Y. because of hostility directed at S.Y. by faculty and students and reasons set forth hereafter.  KYUNG did not accompany S.Y. inside the classroom environment.

18.  Truman College received payment and/or compensation and/or tuition payments for S.Y.

19.  S.Y. has been recognized for her achievements at school and in the community. Despite these accomplishments, she experienced hostility, harassment, unequal treatment and discrimination by Defendants.

## A.     Spanish 101, Professor Lopez.

20.   S.Y.'s problems at Truman College began in her Spanish 101 class taught by Professor Elia Lopez during the spring semester of 2007. Prof. Lopez disparaged harassed, intimidated and retaliated against S.Y. by admonishing her unjustly in front of other students because of her age and her voice level, forcing her to compete against native Spanish speaking individuals when the class was presented as being for non-native speaking students, and otherwise treating her differently from non-Asian Females and Males and, persons who were of traditional college age, and other non-native Spanish speakers.

21.   Professor Lopez reduced S.Y.'s grade unreasonably.  Professor Lopez assigned S.Y. a midterm grade of a B, despite S.Y.'s A grade performance as measured by her assignment scores.  After complaints by and/or on behalf of S.Y. were made of the situation and appropriate action initiated, Professor Lopez raised S.Y.'s grade to the appropriate level, an A. After S.Y. finished Spanish 101, Professor Lopez spoke disparagingly about S.Y. to other professors and made false claims regarding S.Y.'s ability and performance.

## B. Biology 121 with Professor Lancki.

22.   Problems again arose for S.Y. when she took Professor Priscilla Lancki's Biology 121 class in the summer of 2007. Professor Lancki harassed, intimidated, discriminated and retaliated against S.Y and Kyung.  Professor Lancki harassed S.Y. in class in front of other students and commented adversely about S.Y.'s age in front of other students in class.  Moreover, on multiple occasions, Professor Lancki tampered with or allowed someone to tamper with, S.Y.'s test materials, resulting in S.Y. receiving failing grades.

23.    For example, during the last week of June 2007, S.Y.'s exam answers and test booklet were either altered or completely forged. After S.Y. and her mother put both Professor Lancki and Dean Roeger on notice of this problem, Professor Lancki stated she was going to "kick S.Y. out of class" and talk to Dean Roeger about removing S.Y. from class.

24.    Truman College gave the impression of trying to resolve this problem by requiring that S.Y. take another exam, where S.Y. earned and, this time, received an A. After S.Y. and Kyung expressed concern over the grading procedure, up to three professors were assigned to grade S.Y.'s subsequent tests and assignments because of the discriminatory grading by Professor Lancki. During this period of monitored grading, S.Y. received all A level grades. Additionally, Dr. Lancki divulged S.Y.'s grades to other students and persons causing her additional problems with her fellow classmates. No meaningful action was taken against, or to restrain, Professor Lancki by her supervisors or Truman College for any of her actions against S.Y.

25.    In retaliation for S.Y.'s filing complaints with Truman College concerning the harassment and discriminatory behavior of Professor Lancki, Professor Lancki performed various actions directed at S.Y. For example, Professor Lancki organized the other students in S.Y.'s Biology 121 class to protest S.Y.'s supposed special treatment to the administration of Truman College. Professor Lancki accused S.Y. of cheating and made other defamatory remarks.

26.    S.Y. asked Professor Lancki to go over a study guide or put an answer key on Blackboard (an online resource for all students in the class), and Dr. Lancki

replied that if she did this, S.Y. would just memorize the answers and get a good grade so she would not do so. When another student made the same request, regarding the same study guide, on the same day, Dr. Lancki went over the study guide for the class despite what she had told S. Y. before. Professor Lancki directed other acts against S.Y. as well.

27.    Professor Lancki's behavior caused S.Y. to be physically afraid of and threatened by Professor Lancki. Moreover, Professor Lancki's behavior caused other students to treat S.Y. with hostility. This hostility directed at S.Y. by Professor Lancki and other students became so severe as to necessitate the assignment of another Professor to accompany S.Y. during class.

28.    Professor Lancki's attitude and hostility towards S.Y. caused other students to turn against and ostracize S.Y. Students even began to follow, harass, intimidate, and verbally abuse S.Y. and Kyung. On at least one occasion S.Y. and KYUNG were forced to take refuge in the Biology Department Office with the help of a faculty member from a group of students who were harassing S.Y. and behaving in a threatening manner.

29.    Directly after the complaints made by the Plaintiffs concerning an incident of exam tampering, S.Y. was the only student moved around the classroom and monitored during exams. For example, she was moved to the back of the classroom where Dean Roeger sat behind her and watched her take the tests while Dean Roeger audibly and distractively drank out of a can. This process was introduced obsessively to prevent S.Y. from cheating. Though there was no reasonable basis for the claim, S.Y. was stigmatized and the claims and actions

succeeded in intimidating her and further singling her out for ridicule and harassment.

30.     Professor Lancki remarked to the class while S.Y. was in attendance that "this was not grade school" and proceeded to tell the class that only in grade school can parents come into the classroom and yell at the teacher.  This comment was in response of KYUNG coming to Professor Lancki in private, over one hour after class, and expressing concern over the tampered and forged test.  KYUNG did not and has not otherwise entered S. Y.'s classroom environment.

31.     Professor Lancki attempted to have S.Y. retake the tampered exam immediately after a scheduled quiz and claimed the scheduling was set by order of Dean Roeger, even though Dean Roeger had informed Plaintiffs that this timing would not happen.  Subsequently, another of S.Y.'s Biology tests was tampered with or forged as well, showing a failing grade for S.Y., which was reported to Dean Roeger and President Walker.

32.     During the midterm exam procedures, S.Y.'s grade was posted as a B, despite her grade of 98 on the midterm exam, which was supposed to be the only grade for the midterm report.

33.     Before the final exam, Professor Lancki instructed the class that the teacher evaluation would be attached. This violated school policy requiring that all evaluations be anonymous. Professor Lancki also told the students they would be given extra credit for filling out the evaluation. Professor Lancki explained that the evaluation would contain evaluations of her ethics and handling of discrimination matters. These remarks were targeted at S.Y. Finally, Dr. Lancki

asked that no one give her a bad evaluation and threatened not to provide recommendations for students evaluating her poorly.

34.    On July 18, 2007, KYUNG again notified President Walker and Dean Roeger that Professor Lancki was telling students in the Biology class that S.Y. was falsely accusing Professor Lancki of wrong doing, and accusing S.Y. by name of cheating. Students in the class wondered why Professor Lancki spent so much time talking about S.Y. instead of teaching Biology.

35.    Professor Lancki continued to harass S.Y. after the Biology 121 class had ended. Professor Lancki talked disparagingly about her to other people at Truman College. Negative rumors regarding S.Y. and this Biology class and Professor continued to circulate at Truman College as late as April 2008.

### C. Chemistry 201, taught by Professor El-Maazawi.

36.    Additional problems developed in the Spring 2008 semester when S.Y. enrolled in Professor Mohamed El-Maazawi's Chemistry 201 class.  Professor El-Maazawi harassed, intimidated, discriminated and retaliated against S.Y. and KYUNG and included, but was not limited to, testing irregularities and focusing unwanted or inappropriate attention on S.Y. and other matters directed against S.Y. and KYUNG.

37.    The Chemistry 201 Laboratory improperly supervised and had inappropriate safety conditions which S.Y. attempted to resolve anonymously but Truman College identified S.Y. and also shared her e-mails with Professor El-Maazawi's.

The conditions went un-remedied and more unequal treatment and retaliation occurred.

38.    Professor El-Maazawi claimed S.Y. had failed a quiz but when  S.Y. and KYUNG requested to see the quiz, Professor El-Maazawi refused to produce it claiming it was lost.  Professor El-Maazawi represented that tests and quiz papers were given to his son to grade, who was not an employee or agent of Truman College, in violation of school policy.

39.    Professor El-Maazawi gave S.Y. a make-up exam, which was more difficult than the previous exam, and though the other students were permitted to use their books during the original exam, S.Y. was not allowed her to use her book. Though most or all other students in the class were given a grade adjustment such as a curve, Professor El-Maazawi did not apply S.Y. a similar favor. Professor El-Maazawi engaged in this discriminatory and harassing treatment in unequal treatment and retaliation for complaints made by S.Y. about Professor El-Maazawi.

40.    Professor El-Maazawi treated S.Y. extremely different when in front of others, versus when she would need to meet with him alone for questions concerning class.  These attitudes and actions of Professor El-Maazawi were discriminatory based upon S. Y.'s age, race, unequal treatment and retaliation for the complaints S.Y. filed.

41.    Professor El-Maazawi's behavior at Truman College placed S.Y. in physical danger and/or fear of physical danger.  On multiple occasions he followed S.Y. while she was on Truman Campus.

42.   The hostile and discriminatory treatment by Professor El-Maazawi accelerated after complaints were made to the Truman College Administration regarding his treatment of S.Y.

43.   The hostility of others towards S.Y. grew as well during and after the incidents in Chemistry 201.  On or about February 19, 2008, just after being informed of S.Y.'s laboratory safety concerns, Dean Roeger informed KYUNG that the school initiate withdrawal procedures out of Chemistry 201 for S.Y., though neither S.Y. nor her parents requested such action at that time.

44.   On March 10th of 2008, because of grading irregularities, Truman College required Professor El-Maazawi have two independent faculty members re-grade S.Y.'s Chemistry 201 assignments. However, neither Truman College nor Professor El-Maazawi's supervisor took any meaningful action to restrain or curtail Professor El-Maazawi's discriminatory and retaliatory treatment of S.Y. and KYUNG.

45.   S.Y. was compelled to withdraw from Chemistry 201 eleven weeks into the semester.  Even after the withdrawal,  harassment, discrimination and unequal treatment and retaliation continued resulting in S.Y. not being able to graduate from Truman in the summer of 2008 as anticipated. Mr. Maazawi and others on his behalf continued the harassment after S.Y. withdrew.

### D. Harassment and Hostility by some John/Jane Does including:

46.   Unknown individuals believed to be associated with or from Truman College harassed Plaintiffs to the point of stalking.  For example, on one occasion S.Y. and her family were stalked at their home.  In this instance a car followed and

tailgating them, starting just outside their home.  The car had a Truman parking card hanging on the rearview mirror.  This incident occurred in April of 2008.  S.Y., KYUNG  and their family were so scared for their safety that they filed a police report. However, as of the date of filing, Plaintiffs have not been able to obtain a copy of the police report.  Police have not revealed the identity of the stalker and Plaintiffs are not aware of what actions, if any, were taken by police to pursue charges or protect Plaintiffs.

### E. Administrative Actions/Inactions

47.   The Board of Trustees appoints the Chancellor and all full-time employees of the District upon recommendation of the Chancellor.  Truman College is part of the City of Chicago Colleges.

48.   While all of the above referenced incidents of harassment, discrimination, unequal treatment and retaliation directed at Plaintiffs were going on, S.Y. and KYUNG  attempted to rectify each situation by contacting the appropriate administration or authority at Truman College.   Plaintiffs notified Truman College administration and Chancellor Watson on many occasions.

49.   Truman College, its administration or Chancellor Watson did not correct the problems or attempt to address them adequately or in a meaningful way. The administration either refused to help or, for example, told S. Y. to drop classes or repeatedly made promises to rectify the discrimination, harassment, unequal treatment and retaliation, but no meaningful action was taken. All of these promises were broken.   The school failed to protect and serve S.Y.'s interests.

50.   KYUNG notified Vice President Rahman on or about April 16, 2007 of problems
with parking issues and of the problems with Professor Lopez's Spanish 101.
KYUNG notified Dean Roeger on June 28, 2007 regarding one of S.Y.'s Biology
tests being tampered with.   In both cases, Vice President Rahman failed to
adequately investigate or rectify the situation adequately. No meaningful action
was taken to resolve these or other matters or protect Plaintiffs' rights.

51.   Chancellor Watson was notified on many occasions of the harassment,
discrimination, unequal treatment and retaliation employees/agents of Truman
College directed towards S.Y and KYUNG.  In one instance, on or about July 5,
2007, KYUNG informed Chancellor Watson of Professor Lancki violating FERPA
by telling the other students, in class and after class, of a "little girl who got an A
on the first quiz, flunked the second quiz, and is now claiming that it was
switched." He was also timely notified of the various acts of harassment,
intimidation, discrimination, unequal treatment and retaliation however, no
meaningful action was taken by him or Truman College to resolve the matters or
protect Plaintiffs' rights.

52.   One July 8, 2007, KYUNG notified President Walker and Dean Roeger of the
continued comments by Professor Lancki.  On July 13, 2007 KYUNG notified
Dean Roeger and President Walker again of Professor Lancki's continued
comments about S.Y. and that this was causing other students to ostracize and
alienate S.Y. However, no meaningful action was taken to resolve these or other
matters or to protect Plaintiffs rights.

53.     On a number of occasions the security guards of Truman College refused to allow KYUNG to accompany S.Y. onto campus and/or escorted her off campus. KYUNG's accompaniment was necessary to insure S.Y.'s safety given her young age and the hostility harassment, discrimination, unequal treatment and retaliation.  For instance, on March 14th, 2007 Ananda Marin, Assistant Dean, spoke with the Security Director and promised that there would not be any problems with S.Y.'s mother parking or accompanying S.Y. on campus.  However, subsequently Truman College Security who sought to prevent KYUNG from parking on campus and accompanying S.Y. on campus. President Walker knew or should have known of this.

54.     In another incident, the Truman College administration ordered the removal of S.Y.'s mother from the premises of Truman College despite S.Y.'s young age and during the harassment, unequal treatment, retaliation and discrimination of Professor Lancki and the Biology Class.

55.     After the Biology exam tampering incident on July 3, 2007 Dean Roeger ordered KYUNG to leave the campus building and threatened to call security to have KYUNG removed on orders from Dr. Rahman, the Vice President of Truman College.  Dean Roeger's two female companions at her direction or without any restraint then made threatening motions toward KYUNG while she was packing her belongings.  S.Y. told KYUNG that a security guard had been placed outside the Biology room after KYUNG was removed from the building.

56.    During this incident S.Y. took a test, which subsequently appeared to be tampered with.  Plaintiffs reported this incident to President Walker and Dean Roeger.

57.    Removing KYUNG and refusing her permission to accompany S.Y. on campus put S.Y. at risk from numerous dangers to her physical and emotional safety.

58.    The administrators of Truman College failed to adequately address the concerns of S.Y. and her parents.  After the complaints were filed, the situation worsened. The administrators of Truman College failed to rectify the unequal treatment and increasing discriminatory and retaliatory conduct of its employees.

59.    While S.Y. excelled academically in her classes, the defendants continued to discourage her academic presence.  Defendants allowed unequal treatment and retaliation to occur against S.Y. after she and her family complained of the discrimination, policy violations, harassment, unequal treatment and retaliation directed at S.Y.

60.    Defendants engaged in a pattern of practice of discrimination, unequal treatment and retaliation against S.Y. and KYUNG  This pattern included Defendants' failures to address the hostility of students and faculty towards S.Y.  This hostility was caused by the actions of Defendants and/ or their agents and/or employees. Defendants also attempted to influence or force S. Y. to leave her classes; for example, Truman College initiated a withdrawal of S. Y. from her Chemistry 201 class in response to S. Y.'s expressing concern over laboratory conditions.

61.    Moreover, Defendants failed to adequately investigate Plaintiffs' experiences of unequal treatment, discrimination, harassment, violations of S.Y.'s protected

rights and retaliation. Defendants allowed persons to stalk S.Y. while she was on the campus of Truman College.  Additionally, Defendants invaded the privacy of S.Y. by monitoring and/or tampering with her email communications.

62.  As a result of Defendants failures to address the repeated harassment and intimidation to which S.Y. was subject, she developed migraine headaches for which she had to seek the care of a doctor and both S.Y. and KYUNG suffered depression and anxiety.

63.  Chancellor Watson was informed many times of the complaints and issues of S.Y. Despite this notice, Chancellor Watson failed to adequately address the problematic issues of Plaintiffs, even after he promised to do so on several occasions.

64.  Plaintiffs filed an EEOC complaint on March 11, 2008; however, though Truman policy requires a response within 45 days as of this filing, no response has been given to Plaintiffs concerning the outcome or progress of this investigation. The investigation did not provide any remedy and a meaningful investigation should have been initiated by Truman much earlier than March 2008.

65.  While Defendants claimed to be trying to address the issues raised in this complaint, Defendants have only given lip service to their duty to investigate and rectify the many problems S.Y has experienced.  For example, while the Chancellor had the apparent duty and authority to supervise, intervene or discipline those who were committing the various acts against Plaintiffs and while he and other administrators pretended to do so on one occasion the

Chancellor falsely claimed he did not have the ability or authority to address or resolve the mistreatment of Plaintiffs and violation of their rights.

## IV. CAUSES OF ACTION

### 1st Cause of Action
### VIOLATION OF TITLE IX (20 U.S.C. § 1681, et seq)

66.    Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

67.    Plaintiffs are both women of Asian descent.   Plaintiffs were subjected to harassment, intimidation, mockery, and, unequal treatment and retaliation based on their sex.  This harassment was so pervasive or severe that it altered the conditions of plaintiff's education, to the point of forcing S.Y. to withdraw from Truman College.  The Truman College Administration and the Chancellor and Board of Directors of the City Colleges of Chicago knew of the harassment suffered by Plaintiffs and failed to remedy the situation.

68.    Defendants receive Federal financial assistance.

69.    As a result of this harassment, Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

### 2nd Cause of Action
### VIOLATION OF TITLE VI (42 U.S.C. § 2000d et seq.)

70.    Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

71.    Plaintiffs are both women of Asian descent.   Plaintiffs were subjected to harassment, intimidation, mockery, and, unequal treatment and retaliation based on their national origin.  This harassment was so pervasive or severe that it

altered the conditions of plaintiff's education, to the point of forcing S.Y. to withdraw from Truman College. The Truman College Administration and the Chancellor and Board of Directors of the City Colleges of Chicago knew of the harassment suffered by Plaintiffs and failed to remedy the situation.

72.    Defendants receive Federal financial assistance.

73.    As a result of this harassment, Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

### 3rd Cause of Action
### VIOLATION OF AGE DISCRIMINATION ACT OF 1975 (42 U.S.C. § 6101 et seq.)

74.    Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

75.    Plaintiff S.Y. was 9 years old when she began attending Truman College. Plaintiff S.Y. was repeatedly subjected to harassment, mockery, and unequal treatment and retaliation on the basis of her young years. This harassment, mockery, and, unequal treatment and retaliation was so pervasive or severe that it altered the conditions of plaintiff's education, to the point of forcing S.Y. to withdraw from Truman College. The Truman College Administration and the Chancellor and Board of Directors of the City Colleges of Chicago knew of the harassment suffered by Plaintiffs and failed to remedy the situation.

76.    Defendants receive Federal financial assistance for the programs and classes in which S.Y. was enrolled.

77.   As a result of this harassment, Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

### 4th Cause of Action
### VIOLATION OF 42 U.S.C. § 1983 and the 14th Amendment

78.   Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

79.   Plaintiff S.Y. was 9 years old when she began attending Truman College. Plaintiff S.Y. was repeatedly subjected to harassment, mockery, and, unequal treatment and retaliation on the basis of her young years. This harassment, mockery, discrimination, unequal treatment and retaliation was so pervasive or severe that it altered the conditions of plaintiff's education, to the point of forcing S.Y. to withdraw from Truman College. The Truman College Administration and the Chancellor and Board of Directors of the City Colleges of Chicago knew of the harassment suffered by Plaintiffs and failed to remedy the situation.

80.   Defendant Truman College is a government entity that had a custom or policy that resulted in a deprivation of Plaintiff's constitutional rights.

81.   Defendants individually and/or collectively, acted to deprive, interfere with, or take away from Plaintiff's rights, privileges or immunities and/or equal protection secured by the Constitution or laws of the United States.

82.   Plaintiffs are a "class of one" and Defendants treated each differently and adversely from others similarly situated and there is no rational basis for this treatment. Additionally, Defendants had illegitimate animus or ill will or were punitive or vindictive or otherwise acted with malice or willfully or intentionally.

83.     Defendants receive Federal financial assistance for the programs and classes in which S.Y. was enrolled.

84.     Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

## 5th Cause of Action
## VIOLATION OF 42 U.S.C. § 1981

85.     Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

86.     Plaintiff S.Y. is a 9 year old female of Asian descent.  Plaintiff S.Y. was repeatedly subjected to harassment, mockery, and, unequal treatment and retaliation on the basis of her young years.  Plaintiffs paid tuition to Truman College with the expectation of being provided an environment suitable for education, thereby creating a contract. This harassment, mockery, and ,unequal treatment and retaliation was so pervasive or severe that it altered the conditions of plaintiff's education, to the point of forcing S.Y. to withdraw from Truman College.  The Truman College Administration and the Chancellor and Board of Directors of the City Colleges of Chicago knew of the harassment suffered by Plaintiffs and failed to remedy the situation, and their repeated failures to correct these actions, deprived plaintiffs of the benefit of this contract.

87.     As a result of the actions of the defendants, plaintiffs have been deprived of their rights to enforce their contract with Truman College in violation of 42 U.S.C. 1981.

88.    As a result of this harassment, Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

## 6th Cause of Action
## UNEQUAL TREATMENT AND RETALIATION

89.    Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

90.    Plaintiffs attempted to exercise their constitutional and statutory rights described herein.  Through the exercise of the rights, Plaintiffs faced an increase in the incidences of harassment, intimidation, and mockery in, unequal treatment and retaliation for the exercise of these rights and in violation of 42 U.S.C. §§ 1981, 1983 as well as the due process and equal protection clauses of the 14th Amendment of the Unites States Constitution.

91.    As a result of these failures to protect Plaintiffs constitutional rights, Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

## 7th Cause of Action
## ASSAULT

92.    Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

93.    Defendant John/Jane Doe parked outside Plaintiffs' home one day and proceeded to follow and tailgate Plaintiffs vehicle when they subsequently left home.  These actions caused Plaintiffs to be in fear of imminent harm.

94.   As a result of intentional threat of force, Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

## 8th Cause of Action
## DEFAMATION/ LIBEL

95.   Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

96.   Without privilege to do so and while acting within the course and scope of their employment at Truman College, Defendants Dr. Priscilla Lancki, Dr. Mohamed El-Maazawi, Ms. Elia Lopez, Ms. Elizabeth Roeger and Dr. Pervez Rahman made false and malicious statements of fact about S.Y.'s intelligence, veracity, ethics, and maturity in an effort to destroy her reputation and ability to pursue her education at Truman College.  In an effort to force Plaintiff S.Y. to withdraw from Truman College, the Defendants listed above made repeated false statements to third parties including other students, faculty and staff at Truman College.  These defamatory statements were part of a system of harassment, intimidation, mockery, and unequal treatment and retaliation directed against Plaintiffs.

97.   As a result of these defamatory statements, Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

## 9th Cause of Action
## CIVIL CONSPIRACY

98.   Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

99.   Defendants, in whole or in part, entered into an agreement to force S.Y. to withdraw from Truman College through a concerted and prolonged campaign of

harassment, intimidation, mockery, and unequal treatment and retaliation, based upon her age, sex, and national origin. This campaign eventually accomplished its purpose when S.Y. was sufficiently intimidated to withdraw from Truman College.

100.  Defendants' actions of including but not limited to verbal abuse and stalking did cause Plaintiffs to be in fear of imminent harm.

## 10th Cause of Action
## FRAUDULENT MISREPRESENTATION/NEGLIGENT MISREPRESENTATION

101.  Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

102.  Truman College, City Colleges of Chicago and administrators Watson, Walker, Roeger and Rahman frequently and repeatedly assured Plaintiffs that they would address and contain the harassment, intimidation, mockery, and unequal treatment and retaliation directed at Plaintiffs.  These statements were intended to induce Plaintiffs' to maintain S.Y.'s enrollment at Truman College, and did in fact succeed in inducing Plaintiffs' to maintain S.Y.'s enrollment at Truman College.  As a result of her continued attendance of Truman College, and the pattern of harassment, intimidation, mockery, and unequal treatment and retaliation to which she was subjugated, S.Y. suffered severe emotional distress leading to migraines and a nervous breakdown.

103.  At the time Defendants made these statements they either knew that the pattern of harassment, intimidation, mockery, and unequal treatment and retaliation would not be curtailed.

104.   In the alternative, Defendants carelessly or negligently failed to ascertain whether their statements were true and that the pattern of harassment, intimidation, mockery, and unequal treatment and retaliation would be stopped.

105.   As a result of these fraudulent or negligent misrepresentations, Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

### 11th Cause of Action
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

106.   Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

107.   Defendants conduct described above, including the harassment, defamation, and unequal treatment and retaliation, was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized community.  Defendants intended to and did inflict severe emotional distress upon Plaintiffs.  Defendants acted with a reckless disregard of the probability of causing severe emotional distress to Plaintiffs.

108.   Defendants actions described above took place within the course and scope of their employment with Truman College/City Colleges of Chicago.  Truman College/City Colleges of Chicago knew or should have known of the gross abuse to which Plaintiffs were subjected, and failed to take any action to prevent or correct the defamation.

109.    As a direct result of the outrageous acts, omissions, conduct, discrimination and reprisal by Defendants, Plaintiffs were physically and psychologically injured and distraught, sustained shock to her nervous system, and suffered severe emotional distress requiring medical attention and counseling.  Defendants' conduct was malicious and intentional, subjecting Plaintiffs to injuries and damages in an amount not yet ascertained, and entitling Plaintiffs to an award of punitive damages, interest, costs and attorney fees.

## 12th Cause of Action
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

110.    Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein :

111.    Defendants conduct described above, including the harassment, defamation, and unequal treatment and retaliation, was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized community.  The harassment and intimidation to which Plaintiffs were subject caused them to fear for their physical danger.  This intimidation reached the point where they had to seek shelter in the Biology Department office from a group of students who had been incited by Defendants harassment and intimidation of Plaintiffs, as well as being stalked by various unknown persons affiliated with Truman College.  During these incidents, Plaintiffs felt contemporaneous fear for their safety.  As a result of this fear, S.Y. was forced to seek the care of a doctor for migraines and a nervous breakdown and withdraw from Truman College.

112.    Defendants actions described above took place within the course and scope of their employment with Truman College/City Colleges of Chicago.  Truman College/City Colleges of Chicago knew or should have known of the gross abuse to which Plaintiffs were subjected, and failed to take any action to prevent or correct the defamation.

113.    As a result of this negligent infliction of emotional distress, Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

## 13th Cause of Action
## FAILURE TO TRAIN, SUPERVISE, INTERVENE AND/OR DISCIPLINE

114.    Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

115.    The harassment, intimidation, mockery, manipulation of grades, claims that S.Y. cheated, escorting by campus police, attacks by students instigated by professors and various acts of stalking as well as the unequal treatment and retaliation to which Plaintiffs were subjected, arose and/or continued at least in part, from the failure of the administrations of Truman College and City Colleges of Chicago to supervise or train its agents/employees or to discipline or intervene when its agents/employees were violating the rights and privileges of others such as Plaintiffs herein and the repeated incidents direct against Plaintiffs.

116.    Shortly after the incidents raised in this complaint began and regularly after subsequent incidents occurred, Plaintiffs went to Truman College and City Colleges of Chicago and its administrators Defendants Watson, Walker, Roeger

and Rahman and were assured the problems would be corrected but they were not addressed but continued and escalated as a result of these Defendants' failure to supervise or train its agents/employees and/or intervene or discipline those who were engaging in the aforementioned conduct set forth in this complaint directly led to Plaintiffs injuries.  Moreover, this failure to supervise and/or train and/or intervene or discipline violated Plaintiffs constitutional rights was a policy, custom or practice of Truman College and City Colleges of Chicago and its officers and administrations and amounted to deliberate indifference of Plaintiffs constitutional rights.

117.    As a result of this failure to train and/or supervise and/or intervene or discipline the employees of Truman College and City Colleges of Chicago, Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

## 14th Cause of Action
## NEGLIGENCE

118.    Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

119.    Defendants owed a duty to Plaintiffs to protect the safety of S.Y., to provide fair treatment to S.Y. and KYUNG and to ensure that their civil rights were protected. Defendants breached this duty by permitting Plaintiffs to be subjected to extensive and repeated harassment, intimidation, mockery, and unequal treatment and retaliation.  Defendants' breach of duty was the actual and proximate cause of Plaintiffs' harms.

120.   As a result of this negligence, Plaintiffs have suffered damages and injuries because of this discrimination in an amount to be determined at trial.

## 14th Cause of Action
## BREACH OF CONTRACT

121.   Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

122.   By accepting admission and payment for S.Y. to attend classes a contract was formed between Defendant Truman College and S.Y. and/or KYUNG for Truman College, its agents and employees, to provide S.Y. with the fair, honest and unbiased opportunity for an education the same as other students and consistent with the representations of the college.

123.   Plaintiffs' provided consideration, which Defendant Truman College accepted.

124.   Defendant Truman College breached the contract with Plaintiffs and Plaintiffs were damaged.

## 15th Cause of Action
## PROMISSORY ESTOPPLE

125.   Plaintiffs hereby incorporate the averments of all previous paragraphs as if fully rewritten herein.

126.   Defendant Truman College made representations regarding the quality of education, fairness and honesty and high quality of its academic environment. Additional representations were made to Plaintiffs during and following the successive incidents. Professor Lopez, Professor Lancki and Professor El-

Maazawi and the various representations by the other defendants are employees, agents and administrators of Defendant Truman College. In the alternative Defendant Truman College and its agents, employees and administrators concealed or withheld facts material to the transaction that defendant could have and should have revealed.

127. Defendant Truman College knew or should have known that these representations were untrue.

128. Plaintiff's knowledge of the actual facts was less than Truman College and its agents, employees and administrators.

129. Truman College and its agents, employees and administrators intended and reasonably expected Plaintiffs to rely on defendant's statements or concealment.

130. Plaintiffs reasonably relied on defendants' statements or concealment to their detriment.

**SPECIAL DAMAGES**

Plaintiffs' damages include depression, anxiety and serious psychological injury the prognosis of which and cost and future cost including permanency will be identified during the course of this litigation.

**WHEREFORE,** Plaintiffs demand the following:

A.  Compensatory damages against Defendants in an amount in excess of one million dollars ($1,000,000.00), plus interest;

B.  Attorney fees;

C.  The costs of this action;

D.  Punitive damages in excess of three million dollars ($3,000,000.00);

E.  For such other and further relief to which Plaintiffs may be deemed entitled to at law and/or equity.


**Respectfully submitted,**


s/John J. Scaccia
**John J. Scaccia, reg. # 0022217**
**Scaccia & Associates, LLC**
*Attorney for Plaintiffs*
536 West Central Ave., Second Floor
Springboro, Ohio  45066
(937) 223-7848
(937) 550-2311 *facsimile*

**TRIAL COUNSEL**


S/Michael D. Robbins
**Michael D. Robbins**
**Michael D. Robbins & Associates**
**150 North Wacker Drive**
**Suite 2460**
**Chicago, IL 60606**
**(312) 899-8000**
**(312) 781-9123**

**Local Counsel**

## **JURY DEMAND**

Plaintiffs respectfully demand a trial by jury on all issues presented herein.

**Respectfully submitted,**

/s/ John J. Scaccia
**John J. Scaccia**