# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KYUNG HYE YANO, Individually and as Guardian/Parent/Next Friend of S.Y., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>CITY COLLEGES OF CHICAGO; HARRY S. TRUMAN COLLEGE; MOHAMED EL-MAAZAWI; PRISCILLA LANCKI; ELIA LOPEZ; ELIZABETH ROEGER; LYNN M. WALKER; PERVEZ RAHMAN; CHANCELLOR WAYNE WATSON; BOARD OF TRUSTEES, CITY COLLEGES OF CHICAGO; and JOHN/JANE DOES,<br><br>Defendants. | No. 08 C 4492<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, a former student of Truman College and her mother, filed a sixteen-count complaint against Truman College, City Colleges, its Board of Trustees, the Chancellor of City Colleges (Dr. Wayne Watson), the interim President of Truman College (Dr. Lynn Walker), the Dean of Instruction at Truman College (Dr. Elizabeth Roger), the Vice President of Academic and Student Affairs at Truman College (Dr. Pervez Rahman) and three of Plaintiff S.Y.'s former professors, Elia Lopez (spanish), Dr. Priscilla Lancki (biology), and Dr. Mohamed El-Maazawi (chemistry). Defendants now move to dismiss the claims they believe are improperly pled and to clarify which persons are parties to the remaining claims.

For purposes of Defendants' motion, I accept the following basic facts from Plaintiffs' complaint as true: S.Y., born on June 19, 1996 is "an academically gifted child" of Asian

descent who entered Truman College in 2006 after graduating from high school at the age of 9. Kyung Hye Yano ("Yano") is S.Y.'s mother. S.Y. completed 51 hours at Truman College before she withdrew because of the alleged harassment and discrimination she suffered. S.Y. faced particular problems in three courses while enrolled at Truman College.

In Spanish 101, Plaintiffs allege that S.Y. was harassed, intimidated and retaliated against in front of other students by Professor Lopez because of her age and voice level and otherwise treated differently from non-Asian females and males and persons who were of traditional college age. Lopez "reduced S.Y.'s grade unreasonably" and spoke disparagingly about S.Y. to other professors about S.Y.'s ability and performance.

In Biology 121, Professor Lancki harassed, intimidated, discriminated and retaliated against S.Y. and Yano, harassed S.Y and commented adversely about S.Y. in class in front of other students, and on multiple occasions tampered with or allowed someone to tamper with S.Y.'s test materials, resulting in S.Y. receiving failing grades. S.Y. and her mother complained to Dean Roeger about the problem with S.Y.'s test materials in Biology, and Roeger attempted to solve the problem by requiring S.Y. to take another exam. In addition, special accommodations were made so that professors other than Professor Lancki were assigned to grade S.Y.'s subsequent tests and assignments. In retaliation, Professor Lancki organized other students to protest S.Y.'s special treatment and he accused S.Y. of cheating. Professor Lancki's attitude and hostility towards S.Y. caused other students to turn against and ostracize S.Y. and she began to feel physically threatened and intimidated. At midterm, S.Y.'s biology grade was posted as a B, despite her grade of 98 on the midterm exam, which was supposed to be the only score accounting for the grade on the midterm report. During the final exam, Professor Lancki passed

out an evaluation and told students that they would be given extra credit for filling it out. The evaluation contained questions relating to Professor Lancki's ethics and handling of discrimination matters. Professor Lancki threatened not to provide recommendations for students who gave her a poor evaluation. Yano again contacted Dean Roeger to complain. After Biology 121 ended, Professor Lancki continued to harass S.Y. by talking disparagingly about her to others at Truman College.

In Chemistry 201, S.Y. experienced similar problems with Professor Mohamed El-Maazawi, including testing irregularities and unwanted or inappropriate attention. Professor El-Maazawi additionally "placed S.Y. in physical danger and/or fear of physical danger" and on multiple occasions followed her while she was on campus. After S.Y. complained to the Truman College Administration, Professor El-Maazawi's hostile and discriminatory treatment accelerated. S.Y. was compelled to withdraw from Chemistry 201 eleven weeks into the semester. The harassment, discrimination, unequal treatment, and retaliation continued, and S.Y. was not able to graduate from Truman in the summer of 2008 as anticipated.

Plaintiffs allege that Truman College administration, including Chancellor Watson, President Walker, Vice President Rahman and Dean Roeger, failed to address the problems Plaintiffs complained about in an adequate or meaningful way. Some Truman College security guards refused to allow Yano to accompany S.Y. onto campus and escorted her off campus after Assistant Dean Ananda Marin promised there would not be any problems with this arrangement. On one occasion, Yano was ordered removed from the Truman College premises by the administration. As a result of Defendants' failures to address the repeated harassment and

intimidation, S.Y. developed migraine headaches and both S.Y. and Yano suffered depression and anxiety.

Plaintiffs' response to Defendants' motion to dismiss acquiesced in the dismissal of several claims. Accordingly, the following claims are dismissed: Count III's claim for age discrimination, Count V's claim for discrimination on the basis of national origin, Count X's claim for misrepresentation, Count XII's claim for negligent infliction of emotional distress, Count XIII's claim for negligent training, and the § 1981 portion of Count VI for unequal treatment and retaliation. The institutional Defendants answered Count I's claim based on a violation of Title IX and Count II's claim based on a violation of Title VI. Plaintiffs concede that the individual defendants ought to be dismissed from these counts and do not object to the dismissal of Yano from these counts as well. Defendants have otherwise answered Count VII's claim for assault and Count XI's claim for intentional infliction of emotional distress. This leaves Defendants' motion to dismiss pending as to: Count IV and VI's § 1983 claim, Count VIII's claim for defamation, Count IX's claim for civil conspiracy, Count XIV's claim for negligence, and Counts XIV and XV's claim for breach of contract and promissory estoppel. For the following reasons, Defendants' motion to dismiss is denied in part and granted in part.

Defendants argue that the *Engquist* rationale precludes Plaintiffs' class-of-one theory under § 1983.[1] *See Engquist v. Oregon Dept. of Agriculture*, 128 S.Ct. 2146 (2008) (holding class-of-one theory cannot be extended to public employment decisions). In *Engquist*, the

---

[1] Following the issuance of *Fitzgerald v. Barnstable School Committee*, 129 S.Ct. 788 (2009), Defendants withdrew their argument that Title IX preempts Plaintiffs' § 1983 claims. *Barnstable* held that Title IX does not preclude a § 1983 action alleging unconstitutional gender discrimination in schools. *Id.* at 797.

4

Supreme Court distinguished between the "government acting as a proprietor that was managing its own internal affairs" and the government acting "as a lawmaker that was attempting to regulate or license." *Id*. at 994 (quotation and citation omitted). As employer, the government "indeed has far broader powers than does the government as sovereign." *Id*. (quotation omitted). Therefore, the Court reasoned, judicial review in the government as employer context is correspondingly restricted. *Id.* In addition, the Court noted that the class-of-one theory of equal protection is an area where the rights of public employees should not be as expansive as the rights of ordinary citizens. *Id.* at 994-95 (noting the same limited rights for public employees in the First Amendment context, citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006), as well as in the Fourth Amendment context where the government need not obtain a warrant to search an employee's property, citing *O'Connor v. Ortega*, 480 U.S.c 709, 721-22 (1987)).

Plaintiff's class-of-one theory, however, does not similarly "upset long-standing personnel practices." *Engquist*, 478 F.3d at 995. The relationship between the parties here is not one of employer-employee, and thus the rationale in *Engquist* which addresses that specific relationship does not apply with particular force here.

A plaintiff may proceed on a class-of-one theory where a "plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster City*, 488 U.S. 336 (1989)). Defendants cite a post-*Engquist* educational case in support of their argument that the class-of-one theory is not available in the educational setting, *see Bissessur v. Indian Univ. Bd. of Trustees*, No. 07 CV 1290, 2008 WL

5

4274451 (S.D. Ind. Sept. 10, 2008), but in that case the plaintiff failed to point to others similarly situated, failed to show differing treatment, and failed to demonstrate any discriminatory intent on the part of the University. The court in *Bissessur* held that plaintiff's equal protection claim was inadequate because he could not escape the rational basis for his dismissal from the academic program - which was that he received an F on a clinical rotation that was an essential part of his academic preparation for the medical profession. *Id.* at *9. The facts here are different: Plaintiffs have successfully alleged that S.Y. was intentionally treated differently from her classmates at Truman College with no rational basis for the difference in treatment. Accordingly, Defendants' motion to dismiss Count IV and the § 1983 portion of Count VI is denied.[2]

In Count VIII, Plaintiffs bring a state law defamation claim, alleging:

> while in the course and scope of their employment at Truman College, Defendants Dr. Priscilla Lancki, Dr. Mohamed El-Maazawi, Ms. Elia Lopez, Ms. Elizabeth Roeger and Dr. Pervez Rahman made false and malicious statements of fact about S.Y.'s intelligence, veracity, ethics, and maturity in an effort to destroy her reputation and ability to pursue her education at Truman. In an effort to force Plaintiff S.Y. to withdraw from Truman College, the Defendants listed above made repeated false statements to third parties including other students, faculty and staff at Truman College. These defamatory statements were part of a system of harassment, intimidation, mockery, and unequal treatment and retaliation directed against Plaintiffs.

---

[2] However, a § 1983 claim cannot be maintained against a municipal entity unless plaintiff makes a showing that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Plaintiffs here make no such showing. Therefore, City Colleges of Chicago is dismissed as a defendant from Counts IV and VI.

Specifically, the claim of defamation against Professor Lancki and Dean Roeger is based on Lancki's repeated statements to others, including students, that S.Y.chetaed on her exams and that her grade was a B when S.Y. actually earned a 98, or an A. Dean Roeger allegedly reinforced Lancki's statements by suggesting students that they were true.

First of all, S.Y., and not her mother, is the proper plaintiff with respect to this count. In addition, Plaintiffs do not contest that the institutional Defendants and Defendants Watson and Walker are dismissed from this count.

Under Illinois law, a "statement is defamatory if it tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006); *see also Knafel v. Chicago Sun-Times, Inc.*, 413 F.3d 637, 639 (7th Cir. 2005).

To establish a common law defamation claim under Illinois law, a plaintiff must allege "that the defendant made a false statement about her; that the defendant caused an unprivileged publication of the statement to a third party; and that the publication of the statement harmed her." *Knafel*, 413 F.3d at 639 (citing *Parker v. House O'Lite Corp.*, 756 N.E.2d 286 (Ill. App. Ct. 2001)).

The individual Defendants argue that because they are government officials and were acting within the scope of their authority (as alleged in the complaint), they are immune from liability as to Plaintiffs' common law defamation claim. *See Barr v. Matteo*, 360 U.S. 564, 569 (1959). Meanwhile, the Institutional Defendants argue they cannot be liable for the conduct of their employees pursuant to Section 107 of the Illinois Tort Immunity Act, which provides that

7

"[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous." 745 Ill. Comp. Stat. 10/2-107 (2009).

Plaintiffs' response brief fails to address Defendants' arguments based on immunity. I find those arguments persuasive, and grant Defendants' motion to dismiss Count VIII.

Count IX's claim for civil conspiracy alleges that "Defendants, in whole or in part, entered into an agreement to force S.Y. to withdraw from Truman College through a concerted and prolonged campaign of harassment, intimidation, mockery, and unequal treatment and retaliation, based upon her age, sex, and national origin." The claim does not clearly allege whether is it based upon a state-law action for "civil conspiracy" or whether it is a claim under 42 U.S.C. § 1985. Defendants respond that the claim is precluded by the intracorporate conspiracy doctrine, whereby acts of an agent are considered in law to be the acts of the principle, *see E.E.O.C. v.Outsourcing Solutions*, No. 01 C 7037, 2002 WL 31409584, at * 17 (N.D. Ill. Oct. 24, 2002), and because the claim does not contain sufficient allegations to withstand a motion to dismiss. *See Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 517 (7th Cir.2007) (to bring a conspiracy claim under Section 1985, "a complaint must indicate the parties, the general purpose, and approximate date of the agreement to form a conspiracy so that the defendant has notice of the charges against him." Plaintiffs response brief fails to address either of these arguments.

Accepting Plaintiffs allegations as true, they has failed to allege any facts remotely related to a conspiracy to commit a future unlawful act. Therefore, Section 1985 is not a basis for liability under the circumstances. In the event that Plaintiffs have alleged the state-law action, that too is precluded by the intracorporate conspiracy doctrine.

Defendants argue that Plaintiffs' negligence claim contained in Count XIV[3] is also barred by the Tort Immunity Act. 745 ILCS 10/2-202; 745 ILCS 10-2-109. The claim alleges that Defendants breached their duty "to protect the safety of S.Y. and to provide fair treatment to S.Y. and Yano and to ensure theat their civil rights were protected" by "permitting Plaintiffs to be subjected to extensive and repeated harassment, intimidation, mockery, and unequal treatment and retaliation", which was the actual and proximate cause of Plaintiffs' harms.

Plaintiffs are correct that the Tort Immunity Act does not protect "willful and wanton conduct." *See* 745 ILCS 10/2-202; *Carter v. Simpson*, 328 F.3d 948, (7th Cir. 2003). Under Illinois Law, conduct is willful and wanton if it "shows actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to a conscious disregard for the safety of others." 745 ILCS 10/7-210. Whether conduct is a willful and wanton is a factual question. *Young v. Forgas*, 720 N.E.2d 360, 367-68 (Ill. App. Ct. 1999). However, Plaintiffs have alleged no facts which suggest conduct rising to the level of willful and wanton on behalf of any of the Defendants, and thus Plaintiffs' negligence claim fails as a matter of law. Accordingly, Count XIV is dismissed.

Counts XIV and XV seek to maintain contract and promissory estoppel claims against the institutional Defendants only. The claims are based upon the institutional Defendants' alleged failure to provide "equal and fair treatment, honest evaluations, and professional academic behavior from the faculty and administration."

---

[3] Plaintiffs complaint lists "14th Cause of Action" twice; the first time under the subheading "NEGLIGENCE" and the second time under the subheading "BREACH OF CONTRACT." I refer here to the claim for negligence and in the following section to the claim for breach of contract.

According to Plaintiffs, the source of the promises were the catalogs, bulletins, circulars, and regulations that Truman College made available to its students. *See Montana v. Peretti*, 661 F.2d 756 (9th Cir. 1981) (since a formal contract is rarely prepared, the general nature and terms of agreement between student and a college are usually implied, with specific terms to be found in the university bulletin and other publications). Indeed, Illinois recognizes that the relationship between a student and an educational institution is in some aspects, contractual. *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992) (citing *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634 (Ill. 1977). However, it is also clear "that Illinois would not recognize all aspects of a university-student relationship as subject to remedy through a contract action. *Id*. (citing *Demarco v. Univ. of Health Scis.*, 352 N.E.2d 356, 361-62) (decision of school authorities relating to academic qualifications, for instance, will not be reviewed by courts)). Cases that have recognized a valid contract claim by a student against a university have done so where the institution failed to perform a particular service altogether, as opposed to failed to adequately perform a promised education service. *Id.* at 417 (referring to *Zumbrun v. Univ. of S. Cal.*, 101 Cal. Rptr. 499 (Cal. Ct. App. 1972), in which a university professor declined to give lectures and a final exam and gave all students a grade of "B", and *Wickstrom v. N. Idaho Coll.*, 725 P.2d 155 (Idaho 1986), in which the court recognized a breach of contract action might exist if a student enrolled in a course explicitly promising instruction that would qualify him as a journeyman, but in which the fundamentals necessary to attain that skill were not even presented).

In this case, Plaintiffs allege broad contractual promises that were breached by Truman College. The contractual obligations Plaintiffs maintain that Defendants promised to fulfill are not of the type that can constitute enforceable promises for a contract claim, nor are they the "unambiguous promises" necessary for a promissory estoppel claim. *See Hall v. NCAA*, 985 F.

Supp. 782, 796 (N.D. Ill. 1997). Moreover, Plaintiffs do not allege that the institutional Defendants failed completely to live up to their end of the bargain; S.Y. completed 51 credit hours during her time at Truman College and Plaintiffs' complaint only alleges problems that occurred in three specific classes. The ambiguous nature of the promises that were breached with respect to S.Y. and her mother make this an inappropriate case for promissory estoppel. Plaintiffs' complaints are best addressed by the counts that survive Defendants' motion to dismiss. Accordingly, Counts XIV and XV are dismissed.

For the foregoing reasons, Counts III, V, VIII, IX, X, XI, XII, XIII, XIV (both Counts labeled XIV), XV, and the § 1981 portion of Count VI are dismissed. What remains are Counts I and II against the institutional defendants only on behalf of S.Y., Count IV and the § 1983 portion of Count VI against the individual defendants only, and Count VII.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: March 30, 2009