**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KYUNG HYE YANO, individually and as Guardian/Parent/Next Friend of S.Y., a Minor,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY COLLEGES OF CHICAGO, et al.<br><br>    Defendants. | No. 08 CV 4492<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

    Before the Court is Defendants' motion for summary judgment on Counts III ('class-of-one' equal protection claim) and IV (First Amendment retaliation claim) of the Amended Complaint. This is the second installment of my ruling on Defendants' motion for summary judgment. On March 13, 2013, I granted summary judgment for Defendants on Counts I (Title IX gender discrimination), II (Title VI national origin discrimination), VI (defamation *per se*), and VIII (defamation *per quod*).[1] I denied summary judgment on Count X (intentional infliction of emotional distress) for Defendants Lancki and El-Maazawi, but granted it with respect to all other Defendants. I withheld ruling on Counts III and IV so that the parties could brief the issue of qualified immunity.

    With the supplemental briefing completed, I now grant the motion for summary judgment on Counts III and IV.

I.      STANDARD OF REVIEW

---

[1] I incorporate my March 13, 2013 opinion and order herein by reference.

Qualified immunity protects governmental actors "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Stated differently, a government official is entitled to qualified immunity if at the time of the alleged unconstitutional conduct, the law was not sufficiently developed such that the official had "fair warning" that his conduct amounted to a constitutional violation. *United States v. Lanier*, 520 U.S. 259, 270-71 (1997).

At the summary judgment stage, the qualified immunity inquiry involves two questions: (1) has Plaintiff demonstrated a genuine material fact dispute as to whether the defendant violated her substantive constitutional rights?; and (2) was the right clearly established at the time of the alleged violation? I may address these questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

II. ANALYSIS

    A. <u>COUNT III</u>

Count III alleges a "class of one" equal protection claim against all Defendants. A "class of one" claim does not involve discrimination based on class membership or the denial of a fundamental right; it goes to the basic right to be free from arbitrary or malicious "singling out" by the government. *See generally Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To succeed on her "class of one" claim, Plaintiff must show that Defendants intentionally discriminated against her and/or S.Y., and that there is no rational basis for Defendants' actions, *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 913 (7th Cir. 2012) (*en banc*) (Wood, J.,

dissenting), or that Defendants should have known that their discriminatory actions lacked justification, *id*. at 889 (Posner, J., lead opinion); see also *Sung Park v. Indiana University School of Dentistry*, 692 F.3d 828, 833 (7th Cir. 2012).

I first address the substantive constitutional violation. I find that Plaintiff has made an adequate showing that Defendants Lancki and El-Maazawi intentionally discriminated against S.Y. with no rational basis, and therefore violated her Fourteenth Amendment right to equal protection. *Id*. The record suggests that both Lancki and El-Maazawi engaged in abusive treatment toward S.Y. that had no conceivable connection to pedagogy, discipline, or student safety. See *Mathers v. Wright*, 636 F.3d 396, 400-01 (8th Cir. 2011) (finding student adequately stated a "class of one" equal protection violation where teacher's alleged discriminatory conduct "did not arise from educational or safety concerns, but from personal animus against [the student]"); see also *Sung Park*, 692 F.3d at 833, *Martin v. Shawano-Gresham School Dist.*, 295 F.3d 701, 712-13 (7th Cir. 2002) ("class of one" claims are cognizable in the public school context based on irrational discrimination of students by public school officials).

There is evidence that Lancki subjected S.Y. to arbitrary harassment: she repeatedly called S.Y. a "cheater," derogatorily referred to her as a "little girl," accused S.Y. of "slander," attempted to turn the class against her, and possibly even tampered with one of S.Y.'s tests.[2] Truman College's own investigation confirmed that Lancki inappropriately *singled out* S.Y. from the rest of her classmates, which resulted in Lancki's suspension. There is sufficient evidence that Lancki's conduct was fueled by malice (the conduct speaks for itself), and any reasonable teacher would know that singling out a student for public humiliation in response to a parent's (facially legitimate) complaint is unjustifiable.

---

[2] Defendants' suggestion that Lancki's own First Amendment right to academic freedom is somehow implicated in this case is difficult to take seriously.

3

As for Defendant El-Maazawi, much of the conduct of which Plaintiff complains—eating and drinking during labs, listening to his headphones, flagrantly ignoring basic laboratory safety precautions—cannot serve as the basis for a "class of one" claim because it was not directed specifically at S.Y (and much of it is not serious enough to offend the federal constitution). However, there is evidence that El-Maazawi specifically targeted S.Y. for discriminatory treatment by following her around campus in a threatening manner, possibly applying a different grading system to her exams, refusing to meet with her during office hours, adopting a flamboyant procedure for handing back exams designed to humiliate S.Y., treating her with open hostility in and outside of the classroom, and, once again, losing an exam under suspicious circumstances. El-Maazawi's singling out of S.Y. in these ways was not legitimately tied to his duties as a professor, but instead appears to have been driven by personal irritation with having to teach S.Y. and a desire to lash out in response. See *Del Marcelle*, 680 F.3d at 889 (class of one claims target *"state actors who knew or should have known that they had no justification, based on the public duties, for singling out* [the plaintiff] *for unfavorable treatment – who acted in other words for personal reasons, with discriminatory intent and effect*" (emphasis in original)). I find that El-Maazawi's conduct, considered in the aggregate, is sufficiently severe to amount to a constitutional violation.

Defendants raise several arguments as to why, notwithstanding the above conduct, Plaintiff's cannot establish the underlying constitutional violation. First, Defendants argue that the claims in this case all arise in the classroom context, an environment in which teachers are constantly involved in "discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 603 (2008). In *Engquist*, the Supreme Court refused to recognize a "class of one" equal protection claim in the

public employment context. The employer-employee relationship is so predominated by "subjective and individualized" assessments, the Court determined, that it was impractical for courts to police against legitimate versus illegitimate instances of differential treatment. *Id*. at 604. Defendants argue that like the employer-employee relationship, the teacher-student relationship is so pervaded by subjective and individualized determinations—the need to tailor teaching methods to fit individual learning styles, the legitimate need to discipline disruptive students, etc.—that teachers broad discretionary authority should not be subject to "class of one" scrutiny. In other words, differential treatment is an inherent part of education, and thus "class of one" claims are a "poor fit" for the classroom setting. See *Engquist*, 553 U.S. at 605.

The Eighth Circuit Court of Appeals considered *Engquist*'s applicability to the classroom context in *Mathers v. Wright*, 636 F.3d 396, 400-01 (8th Cir. 2011). The court recognized that teachers, like public employers, must be allotted a broad degree of discretionary authority in carrying out their public duties given subjective assessments that take place in the classroom. *Id*. However, the Court found that discriminatory treatment of students that has no conceivable connection to "educational or safety concerns…exceed[s] the scope of professionally acceptable choices," and is not insulated from "class of one" claims. *Id*. at 401. Essentially, the *Mathers* court found that unlike the public employment context, it was practicable (and necessary) for courts to distinguish between legitimate and illegitimate forms of differential treatment in the classroom setting.

I think *Mathers* has it right. First, *Engquist* expressly limited itself to the public employment context, so it is not controlling precedent for the classroom. *Engquist*, 553 U.S. at 607. Second, although the teacher-student relationship involves a "vast array of subjective, individualized assessments," and it would be unrealistic (and highly undesirable) to inject

5

constitutional scrutiny into the vast majority of these assessments, there is good reason to preserve a limited window for "class of one" claims in the classroom setting post-*Engquist*. The Court's determination that "class of one" claims are a "poor fit" in the public employment context was based largely on its finding that such claims are incompatible with basic principles of at-will employment. *Engquist*, 553 U.S. at 606-07. However, there is no parallel "at-will" principle in the classroom setting—teachers are not free, for example, to terminate their teaching duties based on negative personal feelings toward individual students. So while there is an obvious parallel interest in preserving the broad discretionary authority of teachers, "class of one" claims do not conceptually clash with the student-teacher relationship in the same way they might with the employer-employee relationship.

It is true that, like public employees, students are sometimes afforded diminished constitutional protections so that countervailing public interests may be advanced. See, e.g., *New Jersey v. TLO*, 469 U.S. 325, 341 (1985) (searches of students on school grounds by public school officials are governed by a reasonableness standard rather than probable cause given "the substantial need of teachers and administrators for freedom to maintain order"); *Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503, 509 (1969) (school officials may restrict otherwise protected speech upon a showing that engaging in the speech would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school"). But the government's role and the corresponding public interests are very different in the employment versus the school setting. When the government acts as proprietor and manager of its internal operations (as in the public employment context), there is an overriding public interest in efficiency, integrity and discipline, so that the day-to-day operations of the government can be executed without needless delay and cost to the public. *See generally Waters*

*v. Churchill*, 511 U.S. 661, 671 (1994) (plurality opinion) ("[T]he government as employer indeed has far broader powers than does the government as sovereign"); *Connick v. Myers*, 461 U.S. 138, 150-51 (1983). The constitutional rights of public employees may be diminished when it is necessary to advance these interests and protect the basic functioning of government.

When the government acts as educator, by contrast, it is said to act *in loco parentis*—a role in which the safety, wellbeing, and intellectual cultivation of students takes on primary importance.[3] To succeed, a "class of one" claim brought by a student against a teacher would have to train on conduct that is harmful to these interests—i.e. arbitrary harassment that negatively impacts the student's emotional wellbeing and ability to succeed in the classroom. So long as teachers' legitimate exercise of professional discretion is shielded, there are no apparent countervailing interests to which a student's right to be free from arbitrary harassment by government officials should give way.

So Plaintiff has made an adequate showing that Lancki and El-Maazawi violated S.Y.'s constitutional right to equal protection because their conduct bears no connection to a legitimate discretionary function. *Mathers*, 636 F.3d at 400. But the same cannot be said of Defendant Lopez. Plaintiff's claims against Lopez amount to the following: 1) Lopez constantly told S.Y. to raise her voice and criticized her pronunciation (and did not do so with other students), which led to a mid-term grade of "B" (but a final grade of "A"); and 2) Lopez spoke disparagingly of S.Y. to other professors. Lopez's criticism of S.Y. is precisely the type of legitimate, discretionary classroom conduct that federal courts ought to have no involvement in regulating. To clear the summary judgment hurdle as to Defendant Lopez, Plaintiff would have to demonstrate far more extreme conduct, or at least make some kind of specific showing that no

---

[3] The *in loco parentis* concept probably does not apply to the same degree in the college setting as K-12 education. College students, it would seem, have greater constitutional rights than primary school students as the government acts more purely as educator at the college level, rather than educator/guardian.

7

other student was treated the same as S.Y. Plaintiff has demonstrated neither. As for Lopez's comments to other professors, she had a right to express her views of S.Y. privately to other faculty members, and Plaintiff has not demonstrated how that resulted in actual injury. Summary judgment is GRANTED on Count III with respect to Defendant Lopez.

Defendants next argue that Plaintiff's "class of one" claims fail because Plaintiff has not identified any similarly situated students who were treated more favorably than S.Y. Some conduct is so out-of-the ordinary, or "so clearly suggests harassment" that a plaintiff need not point to similarly situated individuals who were *not* subject to the harassment in order to state a "class of one" claim. *Geinosky v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012). I think that principle is applicable, in perhaps a more limited form, at the summary judgment stage as well. A reasonable jury could infer, based on Defendant Lancki and El-Maazawi's conduct alone, that no other students were subject to the type of arbitrary singling out that S.Y. experienced in their classrooms.

I do not think the same can be said for the other Defendants. The claims against Defendants Rahman, Roeger and Watson are, with a few exceptions, based on their failure to adequately respond to Plaintiff's complaints.[4] It is very difficult to make out a "class of one" claim based on nonfeasance.[5] In the context of this case, I would need to see some evidence that these defendants responded differently to Plaintiff's complaints then they have to the complaints of other parents. Plaintiff has put forth no such evidence and as such summary judgment is GRANTED for Defendants Rahman, Roeger and Watson with respect to Count III. The conduct

---

[4] One exception is Plaintiff's allegation that Roeger kicked Plaintiff out of the building after she peered into a classroom to observe S.Y. taking an exam. Again, I would need to see some evidence that other parents were afforded greater privileges in this context before a class of one claim could get off the ground. The question is not simply whether other students *have* parents—as Plaintiff, strangely, suggests—the question is whether parents who tried to intervene on behalf of their child in one way or another were treated differently than Plaintiff.

[5] The affirmative acts taken by these Defendants—for example, Roeger's loudly "slurping a soda"—do not, by any stretch of the imagination, offend the federal constitution.

alleged against Defendant Dundzila—comments made about S.Y. in an email—falls short of even stating a "class of one" claim. Summary judgment is GRANTED for Defendant Dundzila with respect to Count III.

Now the question is whether Defendants Lancki and El-Maazawi are entitled to qualified immunity. The trick with this case—as with most qualified immunity questions—is to settle on the proper degree of abstraction or generality in determining whether the right at issue was "clearly established." *See generally Anderson,* 500 U.S. 226. The general right to be free from arbitrary singling out by the government was certainly clearly established by the time the conduct at issue in this case occurred. *See, e.g., Olech*, 528 U.S. 562. But to fairly apply *Anderson*'s directive that constitutional rights not be examined at too high a level of abstraction, 483 U.S. at 689, we must examine, I think, the extent to which the contours of the "class of one" right had been defined in the classroom setting.[6]

Plaintiff has not pointed to a single case that was on the books in the summer of 2007 involving a "class of one" claim brought by (or on behalf of) a student against a teacher based on differential treatment in the classroom. As such, I do not think it can be said that Defendants had "fair warning" that their alleged conduct amounted to a constitutional violation. *Lanier*, 520 U.S. at 270-71. Surely, Plaintiff would argue that my determination runs afoul of *Hope v. Pelzer*, in which the Supreme Court made clear that "officials can still be on notice that their conduct violates established law in novel factual circumstances." 536 U.S. 730, 741 (2002). But,

---

[6] This is where I break company with *Mathers*. I find the qualified immunity analysis in that case (636 F.3d at 401-02) difficult to square with *Anderson*'s emphasis on fact specificity over abstract rights. 483 U.S. at 639. As a general rule, if a court finds itself having to say "we see no reason why something was not clearly established," it is a good sign that "the contours of the right" at issue were not adequately defined (otherwise the court would have an easier time, it would seem, pointing to positive authority to demonstrate that the right at issue *was* clearly established). The *Mathers* court did point to *Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996), to support its position that the right to be free from arbitrary singling out in the classroom when such conduct exceeds the scope of professionally acceptable choices is clearly established. I do not think *Nabozny* provides such support in the "class of one" context, since the discrimination at issue in that case involved traditional discrimination based on membership in a "definable minority." *See Nabozny*, 92 F.3d at 457.

as the Supreme Court suggested, I need to see a case with at least "materially similar" (if not "fundamentally similar") facts to find, without running afoul of *Anderson*, that a right is clearly established for qualified immunity purposes. Try as I might, I can find no such case.[7]

"Class of one" claims typically arise in the law enforcement context. As far as I can tell, the pre-2007/2008 "class of one" cases that arose in the school setting were limited to claims of differential forms of discipline between similarly situated students. *See, e.g., Martin*, 295 F.3d 701. So while it may be that a reasonable school official had fair warning in the summer of 2007 that suspending Student A for the same conduct for which Student B received detention could amount to a constitutional violation under a "class of one" theory, I do not think that translates to fair warning that Lancki and El-Maazawi's conduct—illegitimately singling out S.Y. for differential treatment in and outside of a college-level course—could rise to a constitutional violation.

Let me be clear: no reasonable person in Defendant Lanki or El-Maazawi's position could believe that their conduct was justified. But that establishes the underlying constitutional violation only. Post-*Harlow* (which dropped the subjective inquiry), the qualified immunity question is an objective inquiry into the state of the law. 457 U.S. 800, 818-19. The question is not whether a reasonable defendant knew his actions were wrongful; the question, really, is whether the law was adequately developed such that we can fairly impute upon the defendant knowledge that his actions amounted to a *constitutional* wrong. Post-*Mathers*, the answer to that question may well be "yes"; pre-*Mathers*, it appears to be "no."

Defendant Lancki and El-Maazawi's motion for summary judgment on Count III is GRANTED on qualified immunity grounds.

---

[7] The need for "materially similar" facts arguably takes on heightened importance for "class of one" claims, where context matters to a greater degree than other types of equal protection violations. *See Hanes v. Zurick*, 578 F.3d 491, 495 (7th Cir. 2009).

B.    COUNT IV

Count IV alleges First Amendment retaliation against all Defendants. To establish a *prima facie* case of First Amendment retaliation, Plaintiff must demonstrate (1) she (or S.Y.) engaged in activity protected by the First Amendment, (2) she (or S.Y.) suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008). Plaintiff alleges that Defendant Lancki's hostile conduct toward S.Y. resulted from Plaintiff's legitimate complaints about possible tampering with S.Y.'s Quiz II scantron sheet. Plaintiff alleges that El-Maazawi's hostile conduct toward S.Y. resulted from S.Y.'s legitimate complaints about safety conditions in the laboratory. Defendants respond that 1) the speech at issue was not protected; and 2) even if it was, Defendants are entitled to qualified immunity because it was not clearly established that the speech was protected.

Before plunging into the analysis, it is helpful to review some First Amendment basics. The First Amendment provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." That is pretty categorical language. Nevertheless, the Supreme Court has identified certain types of speech that are of such low social value that they are completely exempt from First Amendment protection, including incitement, *Brandenburg v. Ohio*, 395 U.S. 444 (1969), "fighting words," *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942), and obscenity, *Miller v. California*, 413 U.S. 15 (1973). Other forms of speech have been afforded diminished protection by the Supreme Court due to their low (but not entirely negligible) social

11

value, including commercial speech. *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). If speech is not unprotected—meaning it does not fall within one of the narrow exemptions carved out by the Supreme Court—then it is protected.

Not all protected speech is protected equally. Speech on public issues, or "matters of public concern," occupies the "highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal citations and quotation omitted). That does not mean, however, that speech on matters of private concern is unprotected. *See Id*. at 147 ("We in no sense suggest that speech on private matters falls into one of the narrow and well-defined classes of expression which carries so little social value, such as obscenity, that the State can prohibit and punish such expression by all persons in its jurisdiction"); *United Mine Workers v. Illinois State Bar Association*, 389 U.S. 217, 223 (1967) ("The First Amendment does not protect speech and assembly only to the extent it can be characterized as political. Great secular causes, with smaller ones, are guarded"). So while matters of purely private concern are surely subject to a lower level of protection than speech on public issues, the government may not *ban* private speech, nor may it retaliate against it with impunity by claiming that the speech did not concern anyone other than the speaker.

There is one context in which purely private speech receives no First Amendment protection. "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest," there is generally no First Amendment protection available if the government (as employer) takes an unfavorable personnel action against the employee in reaction to the speech. *Connick*, 461 U.S. at 147. Again, this is *not* because speech on matters only of personal interest is unprotected at large. Rather, it is a functional compromise devised by the Supreme Court to "balance between the interests of the

[employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).

The functional compromise hashed out in *Connick/Pickering* does not apply to student speech. Rather, when students speak independently in the school setting (i.e. not through a forum subsidized by the school, such as a school newspaper, *see Hosty v. Carter*, 412 F.3d 731, 734 (7th Cir. 2005)), that speech is entitled to regular First Amendment protection so long as it does not "materially and substantially" disrupt the work and discipline of the school. *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503 (1969). So while student speech in school that relates solely to matters of private concern is subject to lower protections than speech on matters of public concern (meaning school officials would have broader latitude in regulating private speech), private speech cannot be banned in public schools (absent the "material and substantial" showing) and public school officials certainly cannot retaliate against students for speech related solely to matters of individual concern.

I do not think there can be any real question that Plaintiff and S.Y.'s communication of their grievances to Defendants was protected speech. Even if the speech at issue is construed as relating solely to matters of private concern, which I do not think is necessarily the case (surely there is some public interest in a college's faithful observance of basic laboratory safety precautions, for example), it was entitled to *some* degree of First Amendment protection.[8] *Cf. Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009) (prisoner speech on matters of purely private concern is protected under the First Amendment). There is ample evidence that the negative treatment S.Y. received at the hands of Lancki and El-Maazawi resulted from the

---

[8] Although Plaintiff does not make the argument, I would suggest that Plaintiff and S.Y.'s complaints were also protected under the Petition Clause of the First Amendment, an area in which purely private concerns are clearly protected. *See Eastern Railroad Presidents Conference et al. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).

13

speech, and I believe Defendants' conduct was severe enough to likely deter someone in Plaintiff's and S.Y.'s position from lodging future complaints. Once again, Plaintiff has made an adequate showing of the underlying constitutional violation.

Defendants, however, are entitled to qualified immunity. In *Landstrom v. Illinois Dept. of Children and Family Services*, 892 F.2d 670, 679 (7th Cir. 1990), the Seventh Circuit ostensibly held that the *Pickering/Connick* "public concern" test somehow applies to private citizen speech. Specifically, the Court determined that the complaints of parents to school officials about a coach's conduct toward their child, a grammar school student, was not protected because it did not touch upon a matter of public concern.

I am unsure about the reach of the holding of *Landstrom*. The "delicate balance" between a citizen's right to speak and the employer's need to effectively provide government services—the balancing act out of which the public concern test arises—seems inapplicable in the context of a private citizen complaining to public officials. Indeed, later cases suggest that the Court in *Landstrom* did not intend to extend the public concern test beyond the public employment context. *See, e.g., Bridges*, 557 F.3d 541; *Watkins v. Kasper*, 599 F.3d 791, 795-96 (7th Cir. 2010) (declining to extend the public concern test to speech by prisoners who are employed by the prison). It seems clear that if prison officials cannot retaliate against inmates for voicing purely private grievances, school officials cannot retaliate against parents and students for doing the same.

As the district court for the Central District of Illinois suggested in *Wysocki v. Crump*, 838 F.Supp.2d 763, 770 (C.D. Ill. Dec. 20, 2011), however, until the Seventh Circuit revisits the issue of whether a parent's complaint to school officials is protected speech, I cannot find that Defendants' violated clearly established law insofar as their alleged retaliatory conduct was in

response to Plaintiff's complaints. And in the absence of any authority to suggest that student complaints to school officials on matters of private concern might receive greater First Amendment protection than parent complaints, *Landstrom* effectively obfuscates the contours of S.Y.'s rights to lodge a grievance with school officials such that Defendants Lancki and El-Mazaawi are entitled to qualified immunity for all conduct alleged under Count IV.[9]

Plaintiff has not established the underlying constitutional violation as to the remaining Defendants. I do not believe the conduct alleged against the other Defendants amounts to a constitutional deprivation that would likely deter future protected First Amendment activity, and even if it does the same qualified immunity analysis would pertain.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: July 19, 2013

---

[9] I encourage Plaintiff to appeal my ruling so that the Seventh Circuit has an opportunity to clarify the contours of the speech rights at issue in this case.