IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAYURI YANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-cv-04492 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| MOHAMED EL-MAAZAWI and | ) | |
| PRISCILLA LANCKI, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Sayuri Yano ("Plaintiff") claims to have suffered intentional infliction of emotional distress at the hands of Priscilla Lancki and Mohamed El-Maazawi ("Defendants"), who were her professors at Harry S. Truman College. A jury heard Plaintiff's claim in January 2015 and returned a verdict in favor of Defendants. Now before the Court is Plaintiff's motion for a new trial pursuant to Federal Rule of Civil Procedure 59 ("Motion") (Dkt. No. 230). For the reasons stated below, the Motion is denied.

### BACKGROUND

Sayuri Yano was born on June 19, 1996. She began attending Harry S. Truman College ("Truman"), a member institution of the City Colleges of Chicago, in 2006 when she was just 10 years old. Her mother, Kyung Hye Yano, filed this lawsuit in 2008, individually and on Sayuri Yano's behalf as her parent and guardian, against the City Colleges of Chicago and various affiliated institutions and individuals in response to extreme hostility, harassment, unequal

treatment, and discrimination that both Sayuri Yano and Kyung Hye Yano claim to have suffered while Sayuri Yano was attending classes at Truman.[1]

The original complaint asserted a multitude of federal and state law claims, including discrimination based on gender, national origin, and age; violations of the Due Process and Equal Protection Clauses of the U.S. Constitution; unequal treatment and retaliation; breach of contract; assault; defamation and libel; civil conspiracy; fraudulent and negligent misrepresentation; failure to train, supervise, intervene, and discipline; negligence; promissory estoppel; negligent infliction of emotional distress; and, of course, intentional infliction of emotional distress. (*See* Dkt. No. 1.) Following a mostly successful motion to dismiss by Defendants,[2] all that remained were claims for gender and national origin discrimination, violation of the Due Process and Equal Protection Clauses, unequal treatment and retaliation, and assault.[3] (*See* Dkt. No. 29.) And after the Court ruled on Defendants' motion for summary judgment, the case was narrowed only to Sayuri Yano's claims for intentional infliction of emotional distress against Lancki and El-Maazawi. (Dkt. No. 155.) Meanwhile, shortly before trial, Sayuri reached the age of 18 and was thus able to proceed with her claims on her own behalf. (*See* Dkt. No. 202.) After a five-day trial, a jury ultimately found in Defendants' favor on Plaintiff's surviving claims for intentional infliction of emotion distress.

In advance of the trial, the parties filed various motions *in limine*. Two are at issue here. The first is Defendants' motion *in limine* to exclude evidence regarding the discipline Truman

---

[1] As used in this Memorandum Opinion and Order, "Plaintiff" refers to Sayuri Yano only. Although her mother, Kyung Hye Yano, also brought claims on her own behalf, Kyung Hye Yano's individual claims did not survive summary judgment and are not the subject of this Motion.

[2] Sayuri Yano and Kyung Hye Yano acquiesced in the dismissal of several of their claims.

[3] After the original defamation claim was dismissed, the Court granted leave to amend the complaint to add a new defamation claim. The new claim did not survive summary judgement.

imposed on Lancki for referring to Plaintiff as a "little girl" in front of her biology class. (Dkt. No. 184.) The Court granted the motion—citing Federal Rule of Evidence 407—to the extent Plaintiff sought to introduce evidence that Lancki was punished by Truman or that Truman made or considered changes to its practices, policies, or procedures as a result of the investigation regarding the allegations. (Dkt. No. 221 at 11-13.) The Court reserved ruling, however, regarding whether the evidence could be admitted to demonstrate investigative findings. (*Id*.) In addition, the Court stated that, "Plaintiff will be permitted to use information from the investigation to impeach Defendant Lancki or other witnesses." (*Id*. at 13.)

The second based for Plaintiff's motion for a new trial is the Court's ruling on Defendants' motion *in limine* to exclude references to an alleged tailgating incident involving Plaintiff, her mother, and Dr. Gabriel Hose, who at the time was El-Maazawi's colleague and officemate. (Dkt. No. 185.) The Court granted the motion, finding the evidence irrelevant because Plaintiff could not "offer an evidentiary basis beyond mere speculation from which a jury might find that Hose acted at the direction or instigation of Defendant El-Maazawi." (Dkt. No. 221 at 13-15.)

In seeking a new trial under Rule 59, Plaintiff argues that "[t]he court's not admitting this evidence was erroneous and caused a violation of [her] substantial rights." (Pl. Mot. ¶ 4, Dkt. No. 230.) She further asserts that "[t]he trial essentially came down to a swearing match between [herself], on the one hand, and Drs. El-Maazawi and Lancki, on the other hand," and that "[b]y not hearing the excluded evidence, the jury was denied critically important information that would have provided more weight to [her] testimony . . . . [and] would have caused the jury to more probably believe [her] rather than the defendants." (*Id*. ¶¶ 5, 16.)

**DISCUSSION**

Under Rule 59, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. "A court may only order a new trial if the jury's verdict is against the manifest weight of the evidence, . . . . or if for other reasons the trial was not fair to the moving party." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) (omission in original) (internal quotation marks and citation omitted). "[A] court will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444 (7th Cir. 2009) (internal quotation marks and citation omitted). With respect to an erroneous decision to exclude evidence, "[a] new trial is warranted only if the error has a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice." *Id.* at 440.

**I.      Evidence Regarding the Discipline that Truman Imposed on Lancki**

Plaintiff argues that although evidence regarding the discipline that Truman imposed on Lancki for referring to Plaintiff as a "little girl" in class was excluded pursuant to Defendants' motion *in limine*, "the door was opened to allow such evidence during Dr. Lancki's case-in-chief," yet "the court denied [Plaintiff's] request to cross examine the doctor or any other witness on her punishment." (Pl. Mot. ¶ 3, Dkt. No. 230.) Specifically, according to Plaintiff, the door was opened when Elizabeth Roeger, Dean of Instruction at Truman during the time of the incidents alleged, testified that Lancki had the right to teach her class in the manner she saw fit under principles of academic freedom. Plaintiff contends that Roeger's testimony was introduced to suggest to the jury that Lancki had acted appropriately in her classroom at all times, a suggestion

belied by the disciplinary action taken against Lancki by Truman.[4] Plaintiff further argues that "the evidence of the disciplinary action would not only have rebutted Ms. Roeger's testimony but also would have further buttressed Ms. Yano's testimony about Professor's [*sic*] Lancki's misconduct." (Pl. Reply at 2, Dkt. No. 236.)

As an initial matter, Plaintiff's argument that the evidence would have "further buttressed" her own testimony about Lancki's alleged misconduct—*i.e.*, that the evidence would have allowed the jury to infer that Lancki's actions were wrong—is exactly what is prohibited by Federal Rule of Evidence 407.[5] Fed. R. Evid. 407 ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct."). The evidence would not have been admissible for that purpose.

With respect to Plaintiff's contention that the evidence would have "rebutted" Roeger's testimony, Plaintiff appears to argue that the evidence should have been allowed as impeachment evidence. But such use was not prohibited by the Court's motion *in limine* ruling, as Plaintiff was explicitly given permission to use the evidence for impeachment. (Dkt. No. 221 at 13.) In any case, evidence regarding the disciplinary actions against Lancki would not have been proper impeachment of Roeger's testimony. Although Plaintiff asserts that Roeger testified that academic freedom allowed Lancki to teach the class however she saw fit and that the "testimony obviously was introduced to lead the jury to believe that the Professor had acted appropriately in her classroom at all times" (Pl. Reply at 2, Dkt. No. 236), Roeger said no such thing. Instead, Roeger

---

[4] Plaintiff does not cite any portion of the trial transcript to support her argument. The Court is thus left to guess which testimony and argument Plaintiff finds problematic. The Court need not do so, as "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000).

[5] As stated in the Court's ruling on the parties' motions *in limine*, disciplining an employee qualifies as a subsequent remedial measure. (Dkt. No. 221 at 12.)

testified as follows regarding the general concept of academic freedom during her direct examination:

> Q. Are you familiar with the term "academic freedom"?
> A. Yes.
> Q. What does that mean within the community college environment?
> A. "Academic freedom" means that a faculty member has the freedom, the right to teach a given learning objective, something that has been determined by the State to be included in a course as important for that outcome, in a way that he or she sees as making sense to those students in that learning.
>     So I could be teaching a course that has an objective of teaching someone how to organize an essay in one fashion and another faculty member might still be teaching and would be teaching how to organize an essay, but they do it in a way that makes more sense to them.

(Roeger Test., Trial Tr. at 343:13-344:1.) She later elaborated on the limits of academic freedom on cross examination:

> Q. Okay. All right. There was some discussion by you in response to Mr. Fowler's questions about academic freedom. Do you remember that?
> A. Yes. He asked me about academic freedom.
> Q. Okay. And that discussion was, if I understood it correctly, in regards to a teacher having a certain amount of discretion to teach a course the way they think is appropriate. Is that a fair representation of what academic freedom is?

> A. Not completely.
> Q. Okay.
> A. Academic freedom means that you can teach in a manner the subject, the learning objectives that have been stated for the course by the college and also, in fact, by the Illinois Community College Board and the Illinois Board of Higher Education. There are particular learning pieces that have to go into a course. How I teach them, how I'm able to convey that information to someone, whether I choose to use discussion, whether I choose to use small grouping or action, that's up to me. That's my academic freedom.
> Q. Okay.
> A. But in terms of the content of a course, that's really determined by curriculum from the State.

(*Id*. at 389:17-390:14.)

It is clear from her testimony that Roeger was simply explaining that academic freedom applies to a professor's ability to choose how to teach material. It is also clear that Roeger believes academic freedom only goes so far—for example, although a professor may choose *how* to teach material, the choice of *what* material to teach is out of the professor's hands (at least at Truman). A person could not reasonably infer from Roeger's testimony that academic freedom would exonerate a professor who engaged in inappropriate classroom behavior or interactions with students. In fact, with regard to the allegations of inappropriate conduct by Lancki, Roeger testified explicitly that such behavior would ***not*** be something that a professor would be entitled to do based on principles of academic freedom:

> Q. Based on your understanding, is it academic freedom on the part of a professor to call a student a liar in front of the entire class? Does that fall within the protection of academic freedom?
> A. From my perception --

```
Q. Yes.
A. -- of what academic freedom is, I would say that that's
not an issue of academic freedom from my perception.
Q. Is it an -- is it within academic freedom for a professor
in front of a class to single out a student and call him a
cheater?
A. From my perception, a faculty member has the right to call
a student out and ask a question, but to call someone a
cheater, I am not sure that I would call it academic freedom.
Q. Okay. Is it also within the rubric of academic freedom
for a professor to call a student a slanderer in front of the
entire class?
A. I would not call, from my perception, that academic
freedom.
```

(*Id*. at 390:21-391:14.)

In short, it cannot be said that the exclusion of evidence regarding Lancki's discipline was in error or, even if it were, that the exclusion "had a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice." *Lewis*, 590 at 440. Plaintiff's request for a new trial on this ground is denied.

## II. Evidence Regarding the Alleged Tailgating Incident

Plaintiff also argues that the Court should not have excluded evidence of an incident where Hose allegedly tailgated Plaintiff and her family. She asserts that the evidence would have shown that Hose began following Plaintiff and her family in "an area in which he could not have been expected to be" and that his "tactics while driving behind the Yano's [*sic*] car . . . undoubtedly could be construed only as tailgating." (Pl. Mot. ¶ 13, Dkt. No. 230.) Plaintiff argues that had the jury heard that evidence, "it would have been convinced that Dr. El-Maazawi put his co-professor up to engage in such conduct . . . . Thus, the jury would have more probably believed Ms. Yano's testimony." (*Id.*)

As the Court explained in its ruling on the parties' motions *in limine*, however, the purpose of the trial was to determine whether Plaintiff suffered emotional harm as a result of ***Defendants'*** conduct towards her—even assuming that Hose did tailgate Plaintiff and her family, the evidence would not be relevant (and thus would not be admissible) unless Plaintiff could offer an evidentiary basis beyond mere speculation from which a jury might find that Hose acted at the direction or instigation of El-Maazawi. *See* Fed. R. Evid. 401, 402; *Berry v. Deloney*, 28 F.3d 604, 609 (7th Cir. 1994) (evidence properly excluded where admitting evidence would merely have invited the jury to speculate ). Plaintiff was not able to offer any such evidentiary basis before trial nor did she introduce any such evidentiary basis at trial. The most she offers now is that Hose was El-Maazawi's officemate and colleague, and that the alleged tailgating occurred soon after Plaintiff complained about El-Maazawi's alleged misconduct. To conclude from those facts that El-Maazawi directed Hose to tailgate Plaintiff and her family requires immense speculation. This is insufficient to establish admissibility. Accordingly, the exclusion of evidence regarding the alleged tailgating was not in error. Even if it were in error, excluding the evidence still would not have had such a substantial and injurious effect or influence on the jury's determination that it would warrant a new trial.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a new trial is denied.

ENTERED:

Dated: September 23, 2015

_____
Andrea R. Wood
United States District Judge