Case: 1:08-cv-04492 Document #: 269 Filed: 06/23/16 Page 1 of 7 PageID #:4449
Case: 15-3374    Document: 00712785755    Filed: 06/23/2016    Pages: 7

**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 6, 2016[*]
Decided June 1, 2016

**Before**

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-3374

| | |
|---|---|
| KYUNG HYE YANO and SAYURI YANO, *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 08-cv-4492 |
| MOHAMED EL-MAAZAWI, et al., *Defendants-Appellees*. | Andrea R. Wood, *Judge*. |

**O R D E R**

What started with a disputed grade spiraled into this litigation brought by a student and her mother against two professors and a dean at Harry S. Truman College in Chicago. Sayuri Yano, who was 11 when she was enrolled at Truman, claimed that the defendant professors had singled her out for arbitrary harassment, thus denying her equal protection and also committing the Illinois tort of intentional infliction of emotional distress. Both Sayuri and her mother, Kyung Hye Yano, also claimed that they

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

suffered retaliation for complaining about the professors, in violation of the First Amendment. The district court granted summary judgment for the defendants on the First Amendment and equal-protection claims, and a jury found for them on the state-law claim. On appeal the plaintiffs challenge the adverse decision at summary judgment, as well as several evidentiary rulings made during the trial of Sayuri's tort claim. We affirm the judgment, though our reasoning differs from that of the district court.

We draw the following background facts from the evidence and permissible inferences, noting disputes when significant. Kyung enrolled her daughter in a Truman biology course in the summer of 2007. The following spring Sayuri also took chemistry at the college. The defendant professors, Dr. Priscilla Lancki and Dr. Mohamed El‑Maazawi, taught these courses.

Biology started smoothly, with Sayuri doing well on her first quiz. But she received a failing grade on the second quiz, prompting her and her mother to request a meeting with Professor Lancki. When the professor gave Sayuri's test booklet and "Scantron" answer sheet to mother and daughter for inspection, Sayuri insisted that she did not recognize the penciled notes and doodles in the margins of these documents. When Professor Lancki pointed out Sayuri's name, student number, and signature on the answer sheet, Sayuri insisted that her answers had been erased and changed. Professor Lancki eventually granted the possibility of a "mix-up," and after this meeting Kyung sent an e-mail to her and Dr. Elizabeth Roeger, the Dean of Instruction, asserting that the likely explanation for the failing grade was that someone, perhaps even Professor Lancki, wanted her daughter to fail and had tampered with her quiz. When Professor Lancki did not reply to this accusation, Kyung cornered her after class. Profesor Lancki became upset and, according to Kyung, threatened to talk to Dean Roeger, who is also a defendant, about removing Sayuri from biology. After this confrontation Professor Lancki commented in class that "this is not grade school where parents can come and yell at the teachers."

Sayuri and her mother brought their concerns about grading to Dean Roeger and other administrators. In response the college created for Sayuri a special grading procedure involving a designated mentor and grader and still more staff serving as proctors. Professor Lancki also permitted Sayuri to retake the second quiz, even though Dean Roeger had assured Kyung that she trusted Professor Lancki's grading of the original quiz. The college's internal investigation did not find any evidentiary basis for

Case: 1:08-cv-04492 Document #: 269 Filed: 06/23/16 Page 3 of 7 PageID #:4451
Case: 15-3374     Document: 00712785755      Filed: 06/23/2016     Pages: 7

No. 15-3374                                                                                                  Page 3

Sayuri and her mother's tampering allegations (though the original answer sheet was lost after being turned over to the chair of the biology department).

Dean Roeger was proctoring Sayuri's third quiz when she, too, encountered Kyung outside the classroom. Kyung had been watching from the hallway through a window, and Dean Roeger and two other staff members approached and told her to stop. Kyung left the building, saying later that she had felt threatened. In the weeks that followed, if Sayuri is believed, Professor Lancki cast hostile looks and, during almost every class, commented about how a "little girl" had "cheated" and "slandered" to get a better grade. Professor Lancki acknowledges once calling Sayuri a "little girl" but, by the professor's account, the term was used descriptively rather than in a derogatory manner.

According to Sayuri, during one particular class Professor Lancki had lamented that she did nothing wrong and yet was under stress from being "slandered constantly." Explaining that she might be forced to stop teaching, the professor asked the class to support her with letters to the administration. Instead the students decided to go immediately to Truman's president and voice support for Professor Lancki, leaving only Sayuri behind. Sayuri then joined her mother in the hall, where two students accused them of creating problems for Professor Lancki. Another professor intervened and separated the two sides. Because of the tension, a substitute professor replaced Professor Lancki for the final week of the summer term. Sayuri received an "A" for the course, and the college later suspended Professor Lancki for one day with the explanation that her comment about a "little girl" had been inappropriate.

Then came Professor El-Maazawi's chemistry class in the Spring 2008 term. Sayuri and her mother complained to administrators that Professor El-Maazawi ate and drank in the lab, donned headphones and worked at his personal computer while students conducted experiments, and allowed students to handle corrosive acid without safety equipment. Mother and daughter also complained that one of Sayuri's quizzes had gone missing after she received a failing grade. Although Sayuri was allowed to retake that quiz, she complained that, unlike the first time, the retake was not open-book.

Beyond this, according to Sayuri, she was treated poorly throughout the term. Professor El-Maazawi was gruff, he glared at her and yelled at least once, and sometimes he ignored her when she approached him with questions after class. Even by Sayuri's telling, however, the defendant sometimes ridiculed the entire class as lacking knowledge of basic subjects and compared the students unfavorably to those at other schools where he had taught.

No. 15-3374 Page 4

Sayuri dropped chemistry before the term ended, and when she notified Professor El-Maazawi by e-mail, she accused him of grading everyone but her on a curve. During discovery, however, Sayuri was pressed to explain the basis for this accusation, and she had to concede that her information about a curve originated with past students of the professor, not with anyone in her chemistry class. Sayuri also implied during discovery that Professor El-Maazawi had been following her, though no direct complaint about this had been made to Truman administrators. One time while she was standing in a hallway, Sayuri explained, Professor El-Maazawi had rounded a corner three times and then quickly retreated after making eye contact. On another occasion, Sayuri said, she was in a different professor's class when she saw Professor El-Maazawi look into the classroom through a window in the door. Then one day, Sayuri continued, she and her mother were tailgated by another car whose driver cast threatening looks in their direction. They gave police the license plate number and afterward learned that the driver was a professor who shared an office with Professor El-Maazawi, so they assumed that the defendant must have been behind the incident.

Sayuri withdrew from Truman before finishing her associate's degree. She and Kyung then brought this lawsuit raising a long list of claims against many defendants, but this appeal concerns only the equal-protection, First Amendment, and tort claims against Professor Lancki, Professor El-Maazawi, and Dean Roeger. Sayuri claimed that the two professors had discriminated against her as a "class of one" by arbitrarily singling her out for harassment that also constituted intentional infliction of emotional distress under Illinois law. Both plaintiffs also claimed that they suffered retaliation for raising their joint concerns about the professors' conduct. And they claimed that Dean Roeger had turned a blind eye to the professors' actions, making her liable as well.

At summary judgment the district court concluded that a jury could find that the two professors, though not the dean, had engaged in unconstitutional conduct. But the professors had qualified immunity, the court reasoned, because the rights at issue were not clearly established in the classroom setting. The court allowed Sayuri's supplemental claim of intentional infliction of emotional distress to proceed to trial against the professors, but the jury exonerated both.

On appeal Sayuri first challenges the grant of summary judgment for her former professors on her claims that they discriminated against her as a class of one. A "class-of-one" equal-protection claim can be brought "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is

No. 15-3374 Page 5

no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014). Although Sayuri concentrates on the district court's analysis of qualified immunity, we conclude that the court need not have reached that issue because a jury could not reasonably have found that the defendants violated her right to equal protection.

We start with Sayuri's claim against Professor Lancki. We conclude that the alleged comments do not rise to the level of a constitutional violation; derogatory references by themselves (here, "little girl") are not sufficient to establish a violation of equal protection. *See Chavez v. Ill. State Police*, 251 F.3d 612, 646 (7th Cir. 2001); *Sherwin Manor Nursing Ctr. Inc. v. McAuliffe*, 37 F.3d 1216, 1221 (7th Cir. 1994). And Professor Lancki's accusations in front of the class that Sayuri had been "cheating" and "slandering" to get a better grade, although surely unwise on many levels, were not irrational if meant to deter students from thinking that cavalierly accusing a teacher of professional misconduct could be used as a weapon to erase a poor grade. Even if some facts suggest that Professor Lancki's statements were motivated by animosity, "the test for rationality does not ask whether the benign justification was the *actual* justification," since all that's necessary to defeat the plaintiffs' claim "is a *conceivable* rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013); *see Heller v. Doe*, 509 U.S. 312, 320 (1993); *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 946–47 (7th Cir. 2009).

As for Sayuri's equal-protection claim against Professor El-Maazawi, we cannot perceive any meaningful difference in treatment between her and her classmates. Most of her grievances—poor supervision of students' lab work, failure to provide safety equipment, and general gruffness—affected the entire class, not just Sayuri. And though she asserts that Professor El-Maazawi brushed her off when she tried to ask questions after class or during office hours, she offered no evidence that the defendant was more receptive to questions from her classmates. This was a professor, after all, whom Sayuri and her mother had complained was indifferent to his teaching responsibilities. And Sayuri's remaining accusations against Professor El-Maazawi are wholly speculative (boosting the grades of everyone but her and enlisting another professor to tailgate her and her family) or else too ambiguous or inconsequential to suggest a constitutional violation (odd sightings in the hall one day and not letting her use her textbook when retaking a quiz).

Case: 1:08-cv-04492 Document #: 269 Filed: 06/23/16 Page 6 of 7 PageID #:4454
Case: 15-3374    Document: 00712785755    Filed: 06/23/2016    Pages: 7

No. 15-3374                                                                 Page 6

Both Sayuri and her mother also challenge the adverse ruling at summary judgment on their claims that the professors retaliated against them for their numerous complaints to Truman administrators. To survive summary judgment, the plaintiffs needed evidence from which a jury reasonably could conclude "(1) that they were engaged in constitutionally protected speech; (2) that public officials took adverse actions against them; and (3) that the adverse actions were motivated at least in part as a response to the plaintiffs' protected speech." *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008).

Whether or not the plaintiffs engaged in protected speech, we conclude that a jury could not reasonably find that they suffered actionable retaliation. Professor Lancki allegedly called out Sayuri in front of her classmates for what the defendant deemed to be false accusations lodged by her and her mother, but the professor's comments were not so offensive that a college student and parent "of ordinary firmness" would be deterred from speaking out in the future. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982); *see Mosely v. Bd. of Educ. of the City of Chicago*, 434 F.3d 527, 534 (7th Cir. 2006); *Lifton v. Bd. of Educ. of the City of Chicago*, 416 F.3d 571, 576 n.3 (7th Cir. 2005) (noting courts' reluctance, in context of public employment, to find adverse effect on exercise of rights as a result of "criticism, false accusations, or verbal reprimands"). Indeed, the plaintiffs' joint complaints about Professor Lancki and, later, Professor El-Maazawi did not diminish at all. And regarding Professor El-Maazawi, there is no evidence tying the alleged retaliatory conduct to complaints about his teaching. As noted, most of what Sayuri complained about had nothing to do with her, and the actions allegedly directed toward her raise no apparent connection to any complaints she had made. A plaintiff cannot defeat summary judgment with a "hunch about the defendant's motives." *Springer*, 518 F.3d at 484; *see Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) (explaining that "speculation may not be used to manufacture a genuine issue of fact"). And hunches, not evidence, are the core of the allegations lodged against Professor El-Maazawi.

The plaintiffs also challenge the grant of summary judgment for Dean Roeger on their claim that she effectively participated in the conduct of the two professors by not doing more to stop their actions. But because we conclude that a jury could not reasonably find that either professor committed a constitutional violation, neither could Dean Roeger be liable to the plaintiffs. *See Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

Case: 1:08-cv-04492 Document #: 269 Filed: 06/23/16 Page 7 of 7 PageID #:4455
Case: 15-3374    Document: 00712785755    Filed: 06/23/2016    Pages: 7

No. 15-3374 Page 7

Last, Sayuri contends that the district court erred by excluding various evidence at trial on her claim of intentional infliction of emotional distress. The short answer is that Sayuri could not have been harmed by any challenged evidentiary ruling because a jury could not reasonably have found for her on this claim even if all of her proffered evidence had been admitted. Under Illinois law, intentional infliction of emotional distress is defined as (1) "extreme and outrageous conduct" (2) engaged in with intent to cause distress or at least with knowledge of a "high probability" of causing severe emotional distress (3) actually resulting in "severe emotional distress." *Dixon v. Cnty. of Cook*, No. 13-3634, 2016 WL 1393527, at *5 (7th Cir. Apr. 8, 2016); *see Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). Conduct is "outrageous" only when "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier*, 798 N.E.2d at 83. The interactions of Professors Lancki and El-Maazawi with Sayuri came nowhere close to this standard. Although the professors' authority over Sayuri is a relevant factor, *see McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1989), their actions, viewed in the light most favorable to Sayuri, were limited to "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities" that are excluded from being deemed "outrageous." *Feltmeier*, 798 N.E.2d at 80 (quoting *McGrath*, 533 N.E.2d at 809).

Accordingly, the judgment of the district court is AFFIRMED.